# Campbell *v.* The State.

## Indictment for Larceny.

1. *Remark of court in hearing of jury, but not given as charge.*—A witness for the prosecution having testified to the measure and peculiarities of certain foot-prints found by him at the scene of the alleged larceny, and to their corres-pondence with foot-prints made by the prisoner ; and the prisoner having been allowed by the court, at the instance of his counsel, to walk over the saw-dust on the floor of the court-room, in front of the jury box, his tracks thereon being measured by his counsel, who observed to the jury, that they differed in certain respects from the tracks described by the witness for the prosecution ; and the prosecuting attorney thereupon objecting to the mode of measurement, and insisting that it was different from that used by the witness for the pros-ecution ; "the court remarked, in the hearing of the jury, that there was no evidence that the defendant had walked over saw-dust." *Held,* that this remark of the presiding judge, "not being untrue, nor of sufficient importance to influence unduly the minds of an intelligent jury," was not a reversible error.

2. *Making foot-prints before jury, on question of identity ; what is revisable.*— It being a material question in this case, whether certain foot-prints, found at the place where the alleged offense was committed, were made by the prisoner ; and the prisoner having been permitted by the court to exhibit his naked feet to the jury, that they might see whether he could have made the tracks,—it is discretionary with the court below to permit him to make tracks on the ground, within view of the jury, for their information ; and the refusal of this permission is not revisable on error.

3. *Admissions implied from silence.*—Evidence of admissions, to be implied from silence, should always be received with great caution, and should be weighed by the jury very carefully, if not *distrustingly* ; and although the evi-dence in this case was properly received, a charge instructing the jury that "the fact that a person who is charged with the commission of a crime says nothing, but remains silent, is a circumstance to which the jury may look *as a confession* of guilt," was calculated to mislead them, and is a reversible error.

FROM the Circuit Court of Wilcox.

Tried before the Hon. JOHN K. HENRY.

The defendant in this case was indicted for the larceny of "part of an outstanding crop of corn," which was averred in the indictment, in the alternative, to be the property of J. H. Thompson, J. J. Morse, and W. Colton, or of a partnership composed of those three persons, or of certain persons whose names were to the grand jury unknown ; and pleaded not guilty to the indictment. On the trial, as appears from the bill of exceptions, the following proceedings were had :

"The State introduced one Henry Thompson as a witness,

who testified, that he had known the defendant for several years; that he and the defendant, during the summer of 1875, lived on the place named in the indictment as belonging to Thompson, Colton and Morse; that he discovered, some time during the month of August that year, that some persons had been taking a few ears of corn, the property of the persons named as owners in the indictment, from a certain field on said place, of about six acres, which belonged to said Thompson, Morse and Colton; that adjoining the said six-acre field, and separated only by a 'turn row,' was a small patch of corn which belonged to the defendant; that there was a road, or path, which led from the quarter, where the defendant and several other negroes who were laborers on the place dwelt, through a gate, down to the point where said 'turn row' was, and passed on by the said six acres of corn; that from the point where said 'turn row' led away from said road, he followed the bare-footed track of a person, for a short distance down said 'turn row,' where it turned into the defendant's path, passed through a portion of the same, and then across the 'turn row' into the said six-acre piece, and through it back to the said road, along which he followed it up, to the gate which opened into the quarter, after which the track could be traced no further; that said track, with all its peculiarities, was plainly visible wherever made in sandy soil; that, following the route of said tracks, he found at different points that as many as a dozen ears of corn had been taken in said six acres; that this was all he discovered had been taken in that part of said six acres, though, in another part of the field, were tracks other than those of defendant, and other corn had been taken. The witness said, that this was on Saturday morning, and, as he had not been to the place since the preceding Thursday evening, he would not undertake to say when the corn was taken, but it was between those times, and he would judge it was quite recent; that he searched the defendant's premises, and found in his garden about a peck of shelled corn, exposed to the sun for drying, which the defendant said came out of his own field, which field, the witness said, he examined, and found no corn pulled from it. The witness further said, that the defendant's patch and the said six-acre field were planted from the same seed-corn, but that in the six-acre patch was older by three weeks than the other, and had been stripped of the fodder, and was dry enough to shell, but was not dry enough to grind, which was not the case with the corn in the defendant's patch; that the corn in the garden was the same kind as that which would be produced by said seed; that he accused the defendant of taking the said corn, and the

[Campbell v. The State.]

defendant said nothing in reply. The witness further said, that he had known the defendant in the army, and had lived with him four years, and knew that said tracks were his tracks; that the defendant had very peculiar feet—he was 'slew-footed;' that his foot was remarkably broad just across the beginning of the big toe; that he measured the said tracks, and found their breadth at the point indicated more than half the length of the foot; that his tracks were not straight, but bent or curved around and outwards; that he afterwards made defendant make a foot-print in the sand, and applied to it the measure of the track where the corn was taken, and it corresponded exactly with the measure in width and length; that he told defendant, 'he had his own corn, and must not take his,' to which defendant made no reply at that time; that afterwards, but during the same day while talking about the corn, defendant told him, that if he had listened to him (witness), he would not be in this scrape. The State also proved by one Colton, that defendant said, at a time different from that last above mentioned, that if it had not been for *Governor Winston,* who was also a hand on the same place, he would not have been in this scrape. This was, in substance, all the evidence offered by the State. In order to test the accuracy of the description of the defendant's feet, the counsel then offered to show them to the jury, bare of his shoes; which was allowed by the court. The counsel then directed the defendant to walk across the area in front of the jury box, over the saw-dust on the floor of the court-room; which he did. To one of the tracks thus made in the saw-dust, the counsel took a measure of the broadest part, and applied it lengthwise to the track, to show that said track was nearly three times the length of its breadth. To this mode of measurement the counsel for the State objected, remarking, that it differed from the mode of measurement used by the witness Thompson, who measured the track in the field, and that the testimony of said Thompson was in evidence, as well as the impressions made on the saw-dust. The court then remarked, in the hearing of the jury, and without any objection from the prosecuting attorney, that there was no evidence that defendant had walked over saw-dust; to which remark of the court, thus made, the defendant excepted. The defendant's counsel, in order to test the accuracy of the description of the defendant's feet by the witness Thompson, then proposed that the defendant be carried out of the court-house, in the custody of the sheriff, and be allowed to walk over soil similar to that described, on which the tracks had been traced by the witness Thompson, and that the jury be permitted to be present to inspect the

tracks thus made. The court refused to permit this to be done, and the defendant excepted. The defendant's counsel then proposed, that some sandy soil be allowed to be brought up into the court-room, and that the defendant be allowed to walk over the same in the presence of the jury, that they might inspect the tracks thus made, and judge for themselves whether they exhibited the peculiarities described by said witness. The court refused to allow this to be done, and the defendant excepted to the refusal.

"The court charged the jury, among other things, that the fact that a person who is charged with the commission of crime says nothing, but remains silent, is a circumstance to which the jury may look, as a confession of guilt; to which portion of the charge the defendant excepted."

R. GAILLARD, for the defendant, cited *Sims v. The State*, 43 Ala. 33; *Stephens v. The State*, 47 Ala. 708; *People v. McWhorter*, 4 Barb. 438; Burrill's Cir. Ev. 267, note *c; The State v. Blake*, 25 Maine, 350; *Johnson v. The State*, 14 Geo. 55; 3 Phil. Ev. 310; *Bennett v. The State*, 52 Ala. 370; *Moorhouse v. Matthews*, 2 Comstock, 514; *People v. Gonzalez*, 35 N. Y. 49; *Luke v. Calhoun County*, 52 Ala. 115; *Commonwealth v. Kinney*, 12 Metc. 235; *Commonwealth v. Walker*, 13 Allen, 570; *Bob v. The State*, 22 Ala. 566; *Johnson v. The State*, 17 Ala. 618.

JOHN W. A. SANFORD, Attorney-General, for the State, cited Burrill on Cir. Ev. 482–3; Roscoe's Cr. Ev. 55; *Robinson v. Blew*, 20 Maine, 109.

MANNING, J.—After defendant, at the request of his counsel, had been permitted to make tracks in the saw-dust on the court-house floor, that the jury might see whether they were or not of the shape a witness for the State had described those made where the offense was committed, and those of defendant to be, the circuit judge's remark, "that there was no evidence that defendant had walked over saw-dust," not being untrue, nor of sufficient importance to influence unduly the mind of an intelligent jury, the exception to it is not sustained.

2. It was at the option of the court to permit or not the same experiment to be made on mellow earth, either in or out of the court-house, within view of the jury, for their information. Defendant had the advantage, if it was any, of having his naked feet exhibited to the jury, that they might see whether or not they were of the shape which the witness described. It is said of this "immediate real evidence," that

it is "of all proof the most satisfactory and convincing"; and there was a remarkable case on trial before Sir MATTHEW HALE, in which a man successfully defended himself from a charge of rape, fully proved against him, by being permitted to show privately to the jury, that he had a frightful rupture, which made it impossible he could be guilty.—1 Hale's P. C. 636.   In the present case, it could not be very material that the defendant should be permitted to make tracks for exhibition to the jury; for the peculiarity of his ordinary tracks might be caused by some habitual trick of motion in his gait, which he would take pains on such an occasion to avoid.   There was no error in refusing to have such a trial made.

3. In *Bob v. The State* (36 Ala. 565-6), the accused, a slave, was indicted for an assault with intent to murder his master; and during a conversation among white persons, in the presence of his master and of the accused, the measure of a track of the person who had made the assault, was applied to the defendant's shoes, and found to correspond exactly with them; whereupon some of the persons present exclaimed, that those were the shoes that made the tracks of the guilty man; and Bob made no answer.   His silence, under these circumstances, was given in evidence against him.   This court humanely decided, that the evidence ought not to have been received at all; because, "the habitude of thought and feeling, the consciousness of inferiority, and the subordination and discipline belonging to his condition, made it perfectly natural that he should be silent,     *     *     *     from an apprehension that a contradiction might be deemed impertinence."   The maxim, *qui tacet consentire videtur*, the court held, "never applies, unless an acquiescence in what is said can be presumed."   It was further said, "Implication from silence must be drawn with great caution."   So, in *Fuller v. Dean* (31 Ala. 657), this court, quoting from Greenleaf on Evidence, says of this kind of evidence: "It should always be received with caution; and never ought to be received at all, unless the evidence is of direct declarations, of that kind which naturally call for contradiction."   See, also, *Johnson v. The State*, 17 Ala. 618.   The evidence in the cause before us was properly admitted.   But the charge of the court upon it was calculated to mislead the jury, concerning the weight it was entitled to.   They ought not to have been instructed, "That the fact that the person who is charged with the commission of a crime says nothing, but remains silent, is a circumstance to which the jury may look as a *confession of guilt.*" It is often a circumstance, the significance of which may be wholly misunderstood; and it ought, therefore, always to be

[Colly v. The State.]

questioned very carefully, if not distrustingly, by a jury.

For the error in this charge, the judgment of the Circuit Court must be reversed, and the cause remanded.