# Kirby *v.* The State.

*Indictment for Murder.*

1. *Competency of juror; affinity defined.*—Affinity being the tie created by marriage between the husband and the blood relatives of the wife, or between the wife and the blood relatives of the husband, a cousin of the step-father of the deceased is not connected with him by affinity (Code, § 4331), and is competent as a juror on a prosecution for the homicide.

2. *Hearsay evidence, as to locality and circumstances of killing.*—The declarations of the deceased, and of the person who was with him at the time of the shooting, describing the locality and the position of the lat-

ter, made to a person who afterwards went to the place and saw the objects described, are mere hearsay, and not admissible as evidence.

3. *Dying declarations.*—The declarations of the deceased, made several hours after receiving the fatal wound, to the effect that, "if he lived, the defendant should not be harmed for what he had done, if he could help it, and he did not want the defendant harmed if he died: that if a man had come to him in the same way, he would have shot him ; that he did no more than any other man would have done"—though made under a sense of impending death, are not admissible as dying declarations, when offered as a whole, since some of them, at least, do not relate to the identity of the criminal, nor to the facts and circumstances of the killing.

4. *Cross-examination of defendant; admissions implied from silence.* The defendant having testified as a witness for himself, and having denied, on cross-examination, that he had made a particular statement at a time and place named, imputing fault to himself in connection with the origin of the difficulty, he may be further asked if some other person did not, at the time and place named, make such statement in his presence and hearing, without objection or contradiction by him; and having denied that such statement was made in his presence and hearing, it is competent for the prosecution to prove by another person, who was present at the time, that the statement was then and there made, during a conversation in which the defendant participated.

5. *Exception to "each paragraph and each sentence" of charge.*—An exception to "each paragraph and each sentence of said charge as given separately and severally," is a general exception to the entire charge; and it will not avail the appellant, unless each paragraph and each sentence is erroneous.

6. *Murder; charges as to.*—A charge which instructs the jury that, if a man kills another by intentionally shooting him with a gun, he is guilty of murder, unless the evidence shows a justifying reason for the act, or that it was done under circumstances which mitigate criminality, and reduce the offense to a lower grade of homicide, asserts a correct proposition.

7. *Self-defense; freedom from fault.*—Freedom from fault in provoking or bringing on the difficulty, is an essential element of self-defense, since the defendant can not shield himself behind a necessity which his own fault or wrong contributed to produce; and a charge requested, which claims an acquittal on the ground of a reasonable apprehension of danger to life or limb, ignoring the question of fault in bringing on the difficulty, is properly refused.

8. *Same; responsibility for acts or words of another.*—The defendant and a companion having encamped by night in their wagons in the public road, and being aroused from sleep in the middle of the night by the deceased and another, who, passing by, cursed and abused them for obstructing the road, to which abusive words defendant's companion replied in kind ; and after threats of violence by the passers-by, and taunting words in reply, they drove on several hundred yards, and then returned, challenging the others to meet them half-way, to which a defiant answer was returned ;· and on their advancing further, finding that the others had not left their wagons, repeating the challenge, and being told to "come on," defendant fired the fatal shot when the deceased came out into the open space where he could be seen in the moonlight; the defendant was at fault in bringing on the difficulty equally with his companion, although he said nothing until the assailants came near, when he told them to "come on and see," or words to that effect.

9. *Same; danger to life or limb, or great bodily harm.*—The right to kill in self-defense is not limited to cases of necessity, real or apparent, on account of danger to life, but extends equally to cases of danger to limb, or danger of great bodily harm.

10. *Argumentative charges* are properly refused.

[Kirby v. The State.]

FROM the Circuit Court of Crenshaw.

Tried before the Hon. JOHN P. HUBBARD.

The defendant in this case, Walter Kirby, was indicted for the murder of Hill Pitman, by shooting him with a gun; was convicted of murder in the second degree, and sentenced to the penitentiary for the term of twenty years. On the trial, as appears from the bill of exceptions, the name of one Bryant was drawn as a petit juror, and he was asked by the court if he was related to the deceased; to which he answered, "that he was a second cousin to the step-father of the deceased." The defendant thereupon challenged him for cause, and excepted to the ruling of the court holding him to be competent as a juror.

The homicide occurred in July or August, 1889, about twelve o'clock at night, in the public road near Oak Grove church. The defendant and a companion, Jarold Coon, were coming in their wagons to Luverne, where the wagons were to be left in charge of Coon, until the defendant could come to Montgomery and return; and they camped for the night, about ten o'clock, in the public road, near the church. Several hours afterwards, "about the middle of the night," the deceased and one Morgan passed by, returning in a wagon from Luverne, both drunk, or, as Morgan expressed it, "drinking right smart;" and finding the wagons in the road, they began to abuse and curse the occupants for obstructing the public road, making threats of violence against them. The defendant and Coon were aroused from sleep, and got out of their wagon; and as the other parties passed on, Coon returned their abusive language in kind. Morgan testified, on the part of the prosecution, that, as they drove away, "there was constant quarrelling and cursing between them and the persons camped out, the words used by both parties being bitter and abusive;" that, after driving about three hundred yards, the deceased proposed they should "go back and whip them," to which he assented; that they hitched their team, and started back towards the camp, stopping to cut a persimmon sapling "about the size of an ordinary walking-stick," calling out to the other party that they were coming, and daring them to meet them half-way; that a voice from the camp replied, "Come on," or "Come ahead;" that they stopped when within one hundred yards of the camp, and found that the others had not left their wagons; that they again advanced, challenging as before, when the deceased, "who was five or ten steps ahead of wit-

5

ness, proposed to go on to the camp;" that when they were "within about seventy-five yards of the camp, they called out to know who they were," and the answer came back, "Come into the moonshine, and we'll show you;" that he then stepped behind a "stooping post-oak on the road-side, while the deceased went on, and a gun fired when he reached the moonshine;" that he (witness) called out, "Shoot again;" and immediately two other shots were fired, one of which struck the deceased; and they then returned to their wagon, and drove on for nearly a mile, when, on account of the condition of the deceased, they stopped at the house of Mrs. A. M. Jones, and a physician was summoned; but the wound was fatal, and the deceased died during the next night.

The shots were fired by the defendant from a Winchester rifle, while he was standing by the side of his wagon. Coon testified, on the part of the defense, that he made all of the replies from the camp, and the defendant said nothing, until the others had returned half-way, and taunted them with having not left their camp, when he replied, "No, we have not left our wagons, and we don't intend to; go on about your business;" that they continued to advance, making threats of violence, "when defendant told them not to come any further, and not to come into the moonshine;" that they continued to advance, making no halt after the first shot was fired, but repeating their threats of violence, until after the second and third shots were fired. The defendant testified in his own behalf, and stated the facts substantially as Coon had stated them; but he further stated, that he fired the first shot at random, that he was a stranger in the neighborhood, and did not know who the assailants were, how many they were, or how they were armed.

J. P. Tisdale, a witness for the defendant, who lived in the neighborhood, and was familiar with the locality and surroundings, testified that he saw the deceased early in the morning after the shooting, and, after talking with him and Morgan, went and examined the scene of the difficulty; that the wagons of defendant and Coon "stood about three feet out of the ruts, or travelled way; that Morgan's mules, in passing, were pulled away from the wagons just enough to cut the sand about one-half the width of the tier; that there was plenty of room for them to pass without leaving the ruts, and they did not leave the ruts, but pulled to one side just enough to make their tier cut the sides of the rut about half its width; that he saw the stooping post-oak, behind

which Morgan was said to have got, stepped the distance from it to the wagon, and found it just thirty-five steps." He testified, also, that Morgan and the deceased each told him, just before he went to examine the place, "that Morgan got behind a stooping post-oak;" but the court excluded this, on objection by the prosecution, as being mere hearsay, and the defendant excepted.

A. M. Jones, another witness for the defendant, a son of the lady to whose house the deceased was carried after receiving the fatal shot, testified to conversations had by him with the deceased after the physician had announced to him the serious, if not fatal, character of the wound he had received, and the deceased declared his own opinion that he would not get well, the substance of his statements being, "that if he lived, the defendant should not be hurt for what he had done, if he could help it, and he did not want the defendant harmed if he died; that if a man had come to him in the same way, he would have shot him; he did no more than any other man would have done." The court excluded this evidence, on objection by the prosecution, and the defendant excepted.

The defendant was asked, on cross-examination, if he had not said, at a time and place named, in the presence of John Bell and others, "that the difficulty occurred because they ran against our wagons;" and answered, that he did not. He was then asked, if some other person did not, at that time and place, make the remark in his presence, to which question he objected, and, his objection being overruled, answered, "that he did not hear such statement made;" and an exception was reserved to the allowance of this question and answer. John Bell was afterwards introduced as a witness for the prosecution, and testified that, at the time and place named, a few days after the difficulty, some one made the remark in his presence; "that the parties were engaged in general conversation, and he (witness) was talking to defendant about selling him some goods, and he did not know that defendant heard the remark." The defendant objected and excepted to the admission of this evidence.

The defendant excepted, "separately and severally, to each sentence and each paragraph of the charge given by the court, "and he also reserved separate exceptions to the following paragraphs: (13.) "If the defendant killed Pitman in this county, before the finding of this indictment, by shooting him with a gun intentionally and on purpose, he would be

guilty, unless the evidence shows there was a lawful reason for doing the act, or mitigating the offense." (16.) "In order to escape on self-defense, the defendant must have occupied a certain position; the first of which is, that he must have been free from fault in provoking or bringing on the difficulty which resulted in the killing. If he did any-thing to provoke or bring on the difficulty, he can not be guiltless, although in that difficulty it became necessary for him to kill Pitman, in order to save his own life, or prevent great harm to his body." (17.) "If there was a concurrent wrangle of abusive words between the parties at the camp, and defendant was aware of, and participated in it to any extent, or was present and hearing it, not discouraging, but assenting thereto; and there was a challenge, or proposition, made and accepted, to meet half-way; and the deceased came back about half-way, and then, upon those at the camp not going out, threatened or said to them that he would again meet them half-way; and the response from the camp was, in substance, 'Come ahead,' or 'Come on;' and this was not recalled; and the deceased thereupon started on towards the camp, and the defendant then shot and killed him,—the de-fendant would not be free from fault."

The defendant also excepted to the following charge, which the court. gave at the instance of the prosecution: (3.) "It is not a sufficient excuse for the killing, that the deceased merely had the means at hand to effect a deadly purpose, but he must have indicated at the time, by some act or demonstration, a present intention to carry out such pur-pose, thereby inducing on the part of Kirby a reasonable be-lief that it was necessary to take the life of Pitman to save his own."

The defendant asked the following · charges in writing, duly excepting to their refusal:

(1.) "In considering the conduct of defendant and Coon which had any tendency to provoke an attack from the de-ceased and Morgan, it is the duty of the jury to consider such conduct in connection with the .fact, if it be proved, that before the gun was fired defendant and Coon notified them that they were not going to leave their wagons, and tried to get them to go back."

(2.) "The law does not require that the defendant should have retreated from his wagon, to avoid killing his assailant, if he was in fact assailed in such a manner as to produce a reasonable fear that his life was in peril, or that he was

[Kirby v. The State.]

about to suffer some grievous bodily harm from his assailant."

(3.) "The jury must acquit, unless the evidence is so strong as to exclude from their minds a reasonable supposition that the defendant fired the fatal shot from a fear, reasonably excited by the conduct of the deceased, that his own life was in peril, or that he was about to suffer grievous bodily harm; and the danger need not be real—it is sufficient if it appeared to be so."

(4.) "If the defendant fired the fatal shot from a reasonable apprehension that he was about to suffer great bodily harm, or that his own life was in peril, it is the duty of the jury to acquit; and if they have a reasonable doubt as to this, it is likewise their duty to acquit."

(5.) "Although the jury may believe that the defendant fired the fatal shot on purpose, yet, before they can convict, they must be satisfied beyond a reasonable doubt that, at the time, he was not acting under the reasonable belief that his own life was in danger, or that he was about to suffer some grievous bodily harm."

(6.) "To enable the defendant to avail himself of the principle of self-defense, it is not necessary that he was threatened with actual danger to life or limb, but it is sufficient that he acted under a reasonable fear that his own life was in danger, or that he was about to suffer some grievous bodily harm."

GARDNER & WILEY, for appellant.

WM. L. MARTIN, Attorney-General, for the State.

McCLELLAN, J.—"Affinity properly means the tie which arises from marriage betwixt the husband and the blood relatives of the wife, and between the wife and the blood relatives of the husband. But there is no affinity between the blood relatives of the husband and the blood relatives of the wife." The juror Bryant, being a cousin of the step-father of the deceased, was related by affinity to the mother of deceased, but bore no relation to deceased himself, and was a competent juror.—*Paddock v. Wells*, 2 Barb. Ch. (N. Y.) 333; *Salinger v. Earle*, 45 N. Y., S. C. 80.

The proposed testimony of the witness Tisdale, as to what Morgan and deceased told him with reference to the scene of the difficulty, and to the effect that Morgan "got behind

a stooping post-oak tree," was mere hearsay, and properly excluded on that ground.

There was no error in excluding the declarations of the deceased, offered to be proved by the witness A. M. Jones. If it be conceded that, as to deceased's declaration that, "if he lived, the defendant should not be harmed for what he had done, if he could help it; that if he died, he did not want the defendant harmed; that if a man had come to him in the same way, he would have shot him—he did no more than any other man would have done," a sufficient showing was made that deceased was, at the time, under a sense of impending death; yet all of these declarations were offered together; some at least, if not all of them, did not relate to the identity of the criminal, or the facts and circumstances of the killing, within the limits of this class of evidence (*Sylvester v. State*, 71 Ala. 17), and all of them were, therefore, properly excluded.—*Warren v. Wagner*, 75 Ala. 188.

With respect to the evidence of this witness, that deceased told him "it was behind a stooping post-oak at the fork of the road that Morgan got," no predicate, as for the admission of dying declarations, was attempted to be laid; and without this, as we have seen, the statement of deceased was hearsay only, and inadmissible.

Defendant and another stopped for the night by the roadside, with their wagons and teams. Deceased and Morgan, later in the night, travelled along the road, and, when they reached defendant's camp, began cursing and abusing the parties in the camp, for having left one of their wagons partly in the beaten track of the road-way, so that deceased and Morgan were forced to drive to one side, out of the regularly travelled way, but still within the road, in order to pass. This was the inception of the difficulty. There was a conflict in the testimony, as to whether the wagon was really left in the road. The defendant himself testified, that it was not so left; and his evidence in this regard was corroborated by other witnesses. One or more witnesses for the State testified to the contrary. The fact itself was pertinent. It was confessedly competent for the State, on cross-examination, to ask the defendant whether he had said, at a certain time and place, that the difficulty occurred because the wagon of deceased and Morgan ran against his, the defendant's wagon. This being denied, it was, we think, competent for the prosecution to show that this statement had been made, in substance, in the presence and hearing of de-

fendant, and was allowed to go unchallenged by him; the
fact being of a nature to impute fault to defendant with re-
spect to the origin of the difficulty, and naturally calling for
a denial from him, if it did not exist. The defendant being
first asked whether such statement had been made in his
presence and hearing, and having denied that it was so
made, the further evidence adduced by the State in this con-
nection, that such statement had been made in a conversa-
tion in which defendant participated, and hence presumably
in his hearing, and had not been denied by him, was compe-
tent, on the ground that it was contradictory of defendant's
testimony, and also on the ground that his silence, under the
circumstances, was an implied admission of the truth of the
statement, which tended to impute fault to him in respect to
the origin of the difficulty.—*Campbell v. State*, 55 Ala. 80;
*McAdory v. State*, 62 Ala. 154; *Garrett v. State*, 76 Ala. 18;
*Williams v. State*, 81 Ala. 1.

The general charge of the court was delivered in writing,
and is set out in the bill of exceptions. It is recited that
the "defendant excepted to each sentence of said charge,
separately and severally," and that "the defendant also ex-
cepted separately and severally to each paragraph of said
charge." As has been many times ruled by this court, these
were mere general exceptions to the entire charge, and
will not avail the appellant, unless every sentence, or
every paragraph, as the case may be, of the charge, involves
an erroneous statement of the law.—*Goley v. State*, 87 Ala.
57; *Dick v. State*, Ib. 61; *Adams v. State*, Ib. 89; *McGehee
v. State*, 52 Ala. 224; *Black v. Pratt C. & C. Co.*, 85 Ala.
511; 3 Brick. Dig. 80; *Bedwell v. Bedwell*, 77 Ala. 587;
*Stevenson v. Moody*, 83 Ala. 418.

Separate and distinct exceptions were reserved to para-
graphs 13, 16 and 17 of the court's general charge, and
they will be considered. Paragraph 13 embodies a correct
statement of the proposition, that if a man kill another by in-
tentionally shooting him with a gun, the slayer is guilty of
murder, unless the evidence shows a justifying reason for
doing the act, or that it was done under circumstances which
mitigate its criminality, and reduce the offense to a lower
grade of homicide.—*Kennedy v. State*, 85 Ala. 326; *Ex
parte Brown*, 63 Ala. 187.

Paragraph 16 is a sound exposition of the doctrine, that
a defendant who seeks to avoid the punitive consequences of
killing another, on the ground of self defense, must have

been free from fault in provoking or bringing on the fatal difficulty, in which the necessity to take life arose, since he can not shield himself behind a necessity which his own fault or wrong has contributed to produce.—*Storey v. State*, 71 Ala. 329; *Cleveland v. State*, 86 Ala. 1; *Brown v. State*, 83 Ala. 33; *Baker v. State*, 81 Ala. 38; *Parker v. State*, 88 Ala. 6; *Lewis v. State*, 88 Ala. 11.

The altercation which preceded the fatal shot was initiated by deceased and Morgan cursing and abusing the *two* men in the camp. The threats of chastisement and prosecution were directed against *both* the defendant and his companion, Coon. The challenge of deceased and Morgan, looking to a combat half-way between their wagon and the camp, was addressed both to the defendant and Coon. Throughout the altercation, Coon, for himself and the defendant, replied to the curses and abuse of the other parties in kind, dared them to the execution of their threats then and there, and accepted their challenge or invitation to meet and fight on middle ground. One phase of the evidence tends to show, that the defendant himself did not reply to the taunts, threats and challenges of the other party, made both to him and Coon. But there is no evidence that he dissented from anything Coon said or did in behalf of both of them, provoking and bringing on the trouble; nor did he in any way discourage or discountenance the action or language of Coon, nominally and really in their joint behalf, in inviting and inciting deceased and Morgan to the execution of their threats; but, on the contrary, the evidence shows, that however much or little defendant participated in the wrangle of words, he stood ready, armed with a Winchester rifle, to take the lives of the advancing parties, should they, or either of them, come as far as a certain point, where the moon was shining brightly, on the invitation and challenge of himself and companion, as made by the latter. Paragraph 17 of the charge is based on, and supported by evidence which tends to establish the foregoing outline as to defendant's participation in the altercation which brought on the fatal result. Under the facts, if believed to be true, which are thus supported by a tendency of the evidence, there can be no doubt of defendant's participation in, and responsibility for, whatever fault was his companion's in bringing on the difficulty. And his responsibility therefor, as also the bearing his fault in that respect had on the asserted right of self-defense, are correctly

and clearly stated in the paragraph of the general charge under consideration.

The third charge requested by the prosecution should not have been given. It confines the right to kill to those cases in which the defendant has a reasonable belief that it was necessary to kill in order "to save his own life." This is not the law. There may in fact be no danger to *life*, real or reasonably apparent; yet, if there is imminent danger, or a reasonable apprehension of such danger, to *limb*, or involving great *bodily harm*, the right to strike in self-defense accrues, and the assailant may be killed with impunity, if the party assaulted was not in fault. There was evidence on the trial which tended to show, or from which the jury might have inferred, that, while it was not necessary to the preservation of his own life for defendant to kill Pitman, yet defendant was in such imminent peril of great bodily harm, short of the destruction of life, as rendered Pitman's death a necessity, furnishing justification for the fatal shot. The charge had the effect to deny to defendant this justification, and the court erred in giving it.

The charges requested by defendant and refused, are all faulty. The first is a mere argument, neither the giving or refusal of which involves error. The second tended to mislead the jury into the conclusion, that inasmuch as it was not incumbent on defendant to retreat from his wagon, he would be justified in standing his ground there and killing his assailant, although he had wrongfully brought on the difficulty in which the necessity to kill arose. The court had properly stated the doctrine of retreat, and held that it did not apply in this case; and its refusal of this request is fully justified on the ground of its misleading tendency in the particular referred to.

Charges 3, 4, 5 and 6 were each properly refused, because they pretermitted all inquiry as to the fault of the defendant, and authorized his acquittal, without regard to whether or not the necessity under which he fired the fatal shot was superinduced by his own wrong.—*Fallin v. State*, 83 Ala. 5; *Williams v. State, Ib.* 16.

The judgment of the Circuit Court is reversed, and the cause remanded.