369 So.2d 1276 (1979)
Janet IVEY
v.
STATE.
8 Div. 134.
Court of Criminal Appeals of Alabama.
January 30, 1979.
Rehearing Denied March 6, 1979.
*1277 Jeff D. Smith and Jack B. Sabatini of Smith, Gaines, Gaines & Sabatini, Huntsville, for appellant.
William J. Baxley, Atty. Gen., and J. Bernard Brannan, Jr., Asst. Atty. Gen., for the State.
BOWEN, Judge.
The appellant was convicted of murder in the second degree and sentenced to twentyfive years' imprisonment for the shooting and death of her husband. The only issues raised on appeal concern the use of a life size mannequin by the prosecution to demonstrate the trajectory of the bullet which killed the deceased and requiring the appellant to demonstrate the manner in which the pistol was held under the State's theory of the homicide.
In its examination of state toxicologist John Kilburn, the prosecution used a "common mannequin representing a male figure" to demonstrate the path of the projectile through the body of the deceased. The witness performed the autopsy upon the deceased and was properly qualified as an expert. He testified that he traced the path of the projectile through the deceased's body, how this was performed, and also that he "could show the jury from this figure the exact measurements of the wound that was made on the body" of the deceased. The deceased was shot in the chest. Kilburn testified that the entrance wound was consistent with a direct impact and was perpendicular to the body. The projectile went directly through the center of a rib and "from front to back, very slightly downward, a matter of a half inch, and there was very little to no deviation laterally. . . ." The bullet lodged just under the skin of the victim's back.
The witness also testified that the mannequin represented was approximately the same height as the deceased but "as far as the actual anatomy, or musculature, I couldn't say for sure on that matter". Kilburn stated that because the projectile struck a rib he could not ascertain whether it continued on the same path or varied "a little bit" but that it could have done either one.
In the presence of the jury, holes were drilled in the mannequin corresponding to the entrance wound and the position where the projectile was found in the back of the deceased. A steel rod was inserted through these holes and the toxicologist testified *1278 that the rod represented the path of the projectile through the body of the deceased.
Defense counsel objected to use of the mannequin because "(i)t can't be offered in evidence and can't be moved as a human body, and it is erect and can't squat or bend its knees or move as a human".
In a statement given the police the appellant stated that the deceased asked her to bring him a pistol he had recently purchased. She went to the bedroom and got the weapon off the dresser. "When she got in the hallway she pulled the hammer back and Joe got up and told her, don't baby, it's loaded." Then the pistol accidentally fired.
"A. She said she went in the bedroom and got the gun and come back down the hallway, and she cocked the hammer back on it, and that this is when he got up and told her that the weapon was loaded, and it went off.
"Q. And she was holding it in both hands about waist level?
"A. Yes, right like this, the same as she showed me."
In her written confession, to which defense counsel specifically stated, "We don't object to it", the following account appears.
"I picked the gun up off the dresser. As I turned to go back around the door I pulled the hammer back. I thought that Joe was probably still on the couch. I never thought for one minute that the gun was loaded. He must have gotten up and started to the bathroom because when he saw what I did, he said Baby, the gun is loaded. He started straight toward me. I panicked and that's all I remember. I heard the fire of the gun. . . . Joe said Oh God I've been shot."
At trial the appellant testified that her husband had started down the hall when he was shot and after he was shot he fell against a wall. She stated that her written statement was the same as her trial testimony.
On cross examination of the appellant the State had her step from the witness stand in front of the jury and show the jury how she held the gun. The State then had the appellant take hold of the pistol and hold it up level with the rod protruding from the mannequin. In this position the appellant was holding the weapon at eye level. During the demonstration the appellant protested that "It might have been here, but it wasn't" and that she "wasn't that close to Joe". Defense counsel objected to "any demonstration on the part of the defendant as to how she held the gun" because "(t)here is no relationship to what has been testified to and the situation bears no relationship".
The appellant objects to this demonstration or experiment because it (1) forced her to incriminate herself and (2) since there was no evidence as to the position of the deceased at the time he was shot the demonstration bore no "substantial similarity" to the conditions of the actual occurrence as shown by the evidence.

I
The rule on the admissibility of experiments in open court is stated in Shows v. Brunson, 229 Ala. 682, 685, 159 So. 248, 251 (1935).
"Experiments or tests of this character in open court are usually within the discretion of the trial judge, guided by a sound judgment as to whether the result will be sufficiently relevant and material to warrant such procedure. 22 C.J. p. 790, § 899.
"Similarity of conditions, and a test that will go to the substantial question in hand, should appear."
See also Hawkins v. State, 53 Ala.App. 89, 93, 297 So.2d 813 (1974). Both the scope and extent of the experiment, if allowed, rest within the sound discretion of the trial judge. The exercise of that discretion will not be reversed on appeal unless it has been clearly and grossly abused. Campbell v. State, 55 Ala. 80 (1876); C. Gamble, McElroy's Alabama Evidence, § 81.02(1) (3rd ed. 1977).
While the conditions of the experiment and of the occurrence in issue should be substantially similar, they need not be identical. McElroy, § 81.01(4).

*1279 "A reasonable or substantial similarity suffices and only where the conditions are dissimilar in an essential particular should the evidence of an experiment be rejected. If we have a case where the conditions are not identical, then the dissimilarity goes to the weight of the evidence of the experiment but not to its admissibility."
See also Eddy v. State, 352 So.2d 1161 (Ala. Cr.App.1977).
All the evidence, including the statements of the appellant, indicate that the deceased was standing when shot. There is no evidence that he "jumped, bent, flinched, squatted, or took any different position as he made his exclamation or just as the gun fired". Even if there were some evidence to indicate such it would go to the weight rather than the admissibility of the demonstration.
Since the conditions were reasonably or substantially similar and the use of the mannequin was not calculated to unfairly prejudice the appellant, we find that the trial court did not abuse its discretion in allowing the demonstration.

II
The appellant also argues that her Fifth Amendment rights against self-incrimination were violated through the manner in which she was cross examined by the prosecution. During her cross examination the appellant was required to hold the pistol in a manner consistent with the State's theory of how the weapon must have been held according to the trajectory of the bullet. This was inconsistent with the manner in which the appellant testified she held the weapon on direct examination.
An accused on trial for a criminal offense cannot be required to give or furnish testimony against himself either by way of spoken words or by act. Hubbard v. State, 283 Ala. 183, 215 So.2d 261 (1968); Dean v. State, 240 Ala. 8, 197 So. 53 (1940); Article I, § 6, Constitution of Alabama of 1901. However where an accused elects to testify for himself, he waives his constitutional right not to be compelled to give evidence against himself. Brown v. United States, 356 U.S. 148, 154, 78 S.Ct. 622, 626, 2 L.Ed.2d 589 (1958); Lipscomb v. State, 32 Ala.App. 623, 29 So.2d 145 (1947); Green v. State, 218 Ala. 363, 118 So. 506 (1928); Carpenter v. State, 193 Ala. 51, 69 So. 531 (1915); Kelley v. State, 160 Ala. 48, 49 So. 535 (1909); Cotton v. State, 87 Ala. 103, 6 So. 372 (1889). A defendant who has introduced himself as a witness may be cross examined and compelled to do what would be material and competent of any other witness. Coates v. State, 253 Ala. 290, 45 So.2d 35 (1950); Smith v. State, 247 Ala. 354, 24 So.2d 546 (1946). "An accused who has testified in his own behalf may be crossexamined as to any facts or matters, even though collateral, which are inconsistent with the testimony given by him on direct examination, and tend to qualify or contradict such testimony, or to show its improbability." 98 C.J.S. Criminal Law § 401(3) (1957). See also Nicholson v. State, 150 Ala. 80, 43 So. 365 (1907); Stevens v. State, 133 Ala. 28, 32 So. 270 (1902); Eaton v. State, 8 Ala.App. 136, 63 So. 41 (1913).
The general rule on requiring the accused to demonstrate an encounter, action, or position on cross examination is stated at 171 A.L.R. 1144, 1190.
"The right of the prosecution, upon cross examination of a defendant, to require him to give some physical demonstration of matters such as his actions or position at the time of the alleged offense, where he has voluntarily testified concerning those matters on his direct examination, has been sustained as proper cross-examination in quite a variety of circumstances, as shown by the following cases. While not all of them mention the question of constitutional privilege, the general import of these cases appears to be that by voluntarily testifying to and opening up the matter on his direct examination, or perhaps merely by voluntarily becoming a witness in the case, the defendant had waived such privilege as he may have originally had against giving the particular demonstration." *1280 In Lumpkin v. State, 19 Ala.App. 272, 97 So. 171 (1923), it was held not error to require, upon cross examination, a defendant in a homicide case, who had become a witness in his own behalf, to illustrate before the jury how the fatal fight occurred by showing the motions and actions of the parties to the encounter, with the State's attorney taking the part of the deceased. Also in Coates v. State, 253 Ala. 290, 45 So.2d 35 (1950), it was held not error to permit the appellant, at the request of the State during its cross examination and over the objection of defense counsel, to leave the witness stand and sit in a chair, in view of the jury, so as to better demonstrate the manner in which the appellant contended he was holding the gun at the time of its discharge.
The scope and extent of cross examination rest in the sound discretion of the trial court, Bridges v. State, 284 Ala. 412, 225 So.2d 821 (1969), as do the scope and extent of experiments and demonstrations. Campbell, supra; McElroy, §§ 81.01(3), 81.02(1). As a general rule experiments and demonstrations should be permitted to be made in the courtroom in the jury's presence where it reasonably appears that the experiment will aid the jury in ascertaining the truth, where there exists a substantial similarity of conditions and where the experiment will not unfairly prejudice the defendant.
We have carefully searched the record for error prejudicial to the appellant. Our review convinces us that the appellant received a fair trial and the judgment of the circuit court is affirmed.
AFFIRMED.
All Judges concur.

ON REHEARING
BOWEN, Judge.
At the beginning of the in-court demonstration the State apparently inserted the rod protruding from the mannequin into the barrel of the pistol. The State then had the appellant take hold of the weapon. After the appellant stated that she was not "that close" to the deceased when the pistol fired, she was requested and did place herself at the distance from the mannequin that she thought she had been from the deceased. Upon request she held the pistol level with the rod from that position. We think that this demonstration was properly within the discretion of the trial judge.
The testimony and demonstration here reviewed did not run afoul of the rule stated in Crawford v. State, 262 Ala. 191, 192, 78 So.2d 291 (1955), and Padgett v. State, 49 Ala.App. 130, 136, 269 So.2d 147, cert. denied, 289 Ala. 749, 269 So.2d 154 (1972). This rule states that in a murder prosecution it is not permissible for a witness, including a medical expert, to draw conclusions for the jury as to the relative positions of the parties at the time of the shooting from a mere examination of the wounds. It is not competent for a witness, expert or nonexpert, to draw inferences for the jury from the slant or angle of the wound as to the relative positions of the combatants when the fatal shot was fired. "This would be invasive of the province of the jury and a matter of which they would be quite as competent to judge as the witness, having been given a description of the wound." Mathis v. State, 15 Ala.App. 245, 248, 73 So. 122, 124 (1916).
However a properly qualified expert may testify to the "path of flight" or trajectory of the bullet, Wilbanks v. State, 42 Ala.App. 39, 151 So.2d 741, cert. denied, 275 Ala. 701, 151 So.2d 744 (1963). He may testify to the slant or angle of the gunshot wound and describe its character. Woods v. State, 54 Ala.App. 591, 310 So.2d 891 (1975); Mathis v. State, supra. An expert may testify about the direction from which the bullet was fired or the blow was struck, Blackmon v. State, 246 Ala. 675, 680, 22 So.2d 29 (1945), Richardson v. State, 37 Ala. App. 194, 65 So.2d 715 (1953), and may state the distance between the deceased and the barrel of the weapon at the time the fatal shot was fired. Straughn v. State, 270 Ala. 229, 121 So.2d 883 (1960).
*1281 We do not think that the demonstration in this case invaded the province of the jury. Though the appellant has not argued that the demonstration was defective for this reason, we have touched on this matter as a caution to other prosecutors who may attempt similar demonstrations. With these remarks the application for rehearing is due to be and is hereby overruled.
OPINION EXTENDED; APPLICATION FOR REHEARING OVERRULED.
All Judges concur.