The appellant, Jere Chatom, was convicted in 1976 for the murder of two Mobile County sheriff deputies. He was sentenced to two terms of life imprisonment. On appeal, this Court reversed and remanded the conviction. Thereafter, our Supreme Court reversed this Court, and the appellant's conviction was subsequently affirmed. Chatom v. State, 348 So.2d 828
(Ala.Cr.App. 1976), rev'd, 348 So.2d 838 (Ala.); on remand,348 So.2d 843 (Ala.Cr.App. 1977). The appellant then petitioned for writ of habeas corpus in the United States Court of Appeals for the Eleventh Circuit. On October 27, 1988, the Eleventh Circuit reversed and remanded the appellant's conviction on the grounds that he had been denied effective assistance of counsel at trial. Chatom v. White, 858 F.2d 1479 (11th Cir. 1988), cert. denied, 489 U.S. 1054, 109 S.Ct. 1316, 103 L.Ed.2d 585 (1989). The appellant was then retried in the Circuit Court for Mobile County.
Prior to the appellant's second trial, the state moved to consolidate the indictments against the appellant. This motion was granted by the trial court. The appellant was tried in July 1989. He was found guilty of two counts of murder in the second degree and was sentenced to two concurrent terms of life imprisonment. The appellant was credited with the time he had already served. The present appeal is from the second trial of the appellant.
The evidence at trial tended to show that on November 17, 1975, Jere Chatom and Michael Wilson were spotted by Deputy Ronald Barry Kelso of the Mobile County Sherriff's office while he was on routine *Page 103 
patrol in the Mobile County area. While Kelso was patrolling Tanner-Williams Road, he observed an orange and black Blazer vehicle ahead of him traveling at 70 to 75 miles per hour. When Deputy Kelso attempted to stop the vehicle, it sped up, turned off the road and into a field, turned around using a "doughnut" maneuver, and fled in the other direction. Kelso gave chase. As Kelso closed in on the Blazer, the person occupying the passenger side of the vehicle shot the rear window of the Blazer out and started firing at Kelso's car with a shotgun. He fired two shots at Kelso's patrol car. The blasts from the shotgun blew out the left front tire, shattered his left front headlight, knocked out the "blue light" on the driver's side of the patrol car, and hit the hood and the windshield. In all, approximately 80 pellets from the shotgun blast struck the patrol car. Deputy Kelso identified the appellant as the person who fired at him from inside the Blazer. A short time after this incident, back-up officers arrived and Kelso explained the situation to them. Shortly thereafter, the officers found the Blazer abandoned in a nearby field.
While Officers Kelso and Burchett examined the contents of a briefcase found near the abandoned vehicle, Deputies Stolz, Beck, and Morgan started a search of a nearby wooded area. All of a sudden gunshots rang out from the wooded area and it "sounded like a small civil war." As Kelso and Burchett ran towards the gunfire, they found deputies Beck and Stolz dead, and Deputy Morgan wounded.
Michael Wilson, who was driving the Blazer, was also killed during the incident. James Small, a criminalist with the Alabama Department of Forensic Sciences testified that he examined the body of Michael Wilson and that Wilson had suffered a gunshot wound to the chest. He described this wound as a "contact" wound, meaning that the barrel of the gun was actually pressed against Wilson's chest when it was fired. Small further testified that, in his opinion, the wound was not self-inflicted.
The appellant testified in his own behalf at trial. He denied any involvement in the deaths of Beck and Stolz. He raises the following issues on appeal.
 I
Appellant contends that it was reversible error for the trial court to overrule defense counsel's motion for mistrial when the prosecutor commented on the defendant's use of drugs in the rebuttal portion of his opening statement. The complained of remarks were as follows:
"THE COURT: Any rebuttal?
 "MR. VALESKA [Prosecutor]: Yes, sir, just a little bit, Judge.
 "One thing that I forgot to tell you, and since Mr. Deen brought it up, I expect the evidence will show to you that on Sunday night and Monday morning Jere Chatom and Michael Wilson were shooting up opium and smoking marijuana and taking other dope, since he brought it up, is —
 "MR. DEEN: Excuse me, Your Honor, I didn't bring up anything about what they — about them doing any drugs the night before, and that's a different act that we're not on trial for today."
Mr. Deen in his opening statement had made the following comments:
 "When he hurt his wrist he lost his job, came back here to Mobile County, got a job and got married, had a child, and he started hanging around with kind of a rough crowd, the wrong type of crowd, and he got some prescription codeine pills from a doctor and he sold some to a friend one time. Now, when he sold them to the friend, the friend had a friend with him who happened to be a narcotics agent. Jere ends up going to federal — he got sent over to Federal Court and ended up going to prison at the age of about 19. When he was 19 he was sent to prison for six years from Federal Court for selling the codeine. I want you all to know that."
After defense counsel objected to the comment made by the prosecutor, the following exchange took place:
 "MR. DEEN: We move for a mistrial. I brought it up in opening that he'd been convicted of selling codeine some two *Page 104 
years [before] this incident. Nothing brought up about anybody shooting up dope. That's another offense and we object to him bringing it up and I don't think your instructions will cure the error and that's prejudicial error for him to bring up something that's —
"MR. VALESKA: That's what I expect —
 "MR. DEEN: That not a reply in kind to anything I said.
 "THE COURT: First of all, what you said is 'he' used some drugs and sold some to a friend and the friend happened to be a police officer. You didn't say when.
"MR. DEEN: Yes, sir, I was talking about —
 "THE COURT: But you have it in the record and it's denied.
"MR. DEEN: — when he went to prison.
"THE COURT: And it's denied.
 "MR. VALESKA: That's what I expect the evidence to show. That's going to come out anyway."
It is clear after a review of the comments that the prosecution's remarks were not made as a reply in kind to the comments made by defense counsel. Two totally separate instances were involved.
To warrant reversal, the comments by the prosecutor must be "grossly improper and highly prejudicial." Louisville N.R.R.v. Sullivan Timber Co., 126 Ala. 95, 27 So. 760 (1900). " 'The prosecution's opening statement to the jury on what it expects to prove should be confined to statements based on factsadmissible in evidence.' " Ex parte Baldwin, 456 So.2d 129, 136
(Ala. 1984), cert. denied, 472 U.S. 372, 105 S.Ct. 2727,86 L.Ed.2d 300 (1985). (Emphasis added.) Evidence of a separate offense unrelated to the crime in which the appellant is charged is not admissible at trial. See C. Gamble, McElroy'sAlabama Evidence § 69.01 (3d Ed. 1977). See Popwell v. State,530 So.2d 892 (Ala.Cr.App. 1988); Blanco v. State,515 So.2d 115 (Ala.Cr.App. 1987); Phillips v. State, 505 So.2d 1075
(Ala.Cr.App. 1986); Terrell v. State, 397 So.2d 232
(Ala.Cr.App.), writ denied, 397 So.2d 235 (Ala. 1981); Tillmanv. State, 374 So.2d 922 (Ala.Cr.App. 1978), writ quashed,374 So.2d 926 (Ala. 1979); Anderson v. State, 354 So.2d 1156
(Ala.Cr.App. 1977), cert. denied, 354 So.2d 1161 (Ala. 1977);Fuller v. State, 269 Ala. 312, 113 So.2d 153 (1959), cert. denied, 361 U.S. 936, 80 S.Ct. 380, 4 L.Ed.2d 358 (1960).
We cannot say that the statement concerning offenses other than those charged in the indictment is harmless. See Ex parteLowe, 514 So.2d 1049 (Ala. 1987). To be harmless error, the statement must not have affected the appellant's substantial rights. Rule 45, Ala.R.App.P. We believe that the comment so prejudiced the appellant in the eyes of the jury that he was denied a fair trial. For the reasons stated above, this case is reversed and remanded to the Circuit Court for Mobile County.
 II
The appellant next contends that the trial court erred in denying his Batson motion based on grounds of denial of due process. Specifically, he contends that the state used its peremptory strikes to eliminate all blacks from the venire. Initially, we note that the appellant is a white male challenging the removal of blacks from the jury venire. The appellant now has standing to challenge the removal of blacks from the jury venire.
This issue has recently been decided by the United States Supreme Court in Powers v. Ohio, ___ U.S. ___, 111 S.Ct. 1364,113 L.Ed.2d 411 (1991). That Court stated:
 "Invoking the Equal Protection Clause and federal statutory law, and relying upon well-established principles of standing, we hold that a criminal defendant may object to race-based exclusions of jurors effected through peremptory challenges whether or not the defendant and the excluded juror share the same race."
In the instant case, 11 black jurors were in the venire and all 11 were struck by the prosecution. Defense counsel made aBatson objection, and the court denied it, stating that the defendant could not challenge *Page 105 
the exclusion of blacks from the venire because he is a white male. There is no indication in the record as to why the 11 black prospective jurors were struck. Had we not reversed this case for the previous issue, we would be compelled to remand this case for a Batson hearing.
In the interest of judicial economy, we will address the remaining issues which appellant raises in his brief.
 III
The appellant further contends that his constitutional rights were violated when the prosecution commented that he could not be forced by the state to take the witness stand.
In his remarks to the venire, Mr. Deen, defense counsel, remarked:
 "Well, let me — I brought up taking sides. How many people want to hear both sides of the story, hear both sides of the case? How many want to hear both sides? How many people want to hear both sides? You don't want to? You do? Anybody not want to hear both sides? Well, let me tell you something. This is a criminal case. The burden is on the State. The Judge will tell you that an accused, in other words, Jere Chatom, doesn't have to say a word here during the two or three days it takes us to try this case. Would [y'all] want to hear both sides of the story? If you only hear one side, if you only hear one side, and if you're not convinced beyond a reasonable doubt that he's guilty of what he's accused of, well, then you sit there and go, well, you know, he didn't testify, he's hiding something from us, or he must be guilty, but even though you're not convinced that they've proved their case, will you vote to find him guilty because you didn't hear anything from him?"
Mr. Valeska, the prosecutor, then remarked:
 "Judge, I just have one rebuttal on what he said.
 "Mr. Deen brought out to you all the question of do you want to hear both sides. I want you all to understand that the State of Alabama cannot make Mr. Chatom testify. So, we can't give you both sides of the story if they elect not to put on any evidence. I want you all to understand that. We don't have that right to make sure that you all get to hear both sides."
Counsel may not make reference to the fact that the appellant does not testify in his behalf. See Blackmon v. State,462 So.2d 1057 (Ala.Cr.App. 1985); Ex parte Williams, 461 So.2d 852
(Ala. 1984). However, the comments made by the prosecution were replies in kind to those made by defense counsel.
As this court stated in Davis v. State, 494 So.2d 851
(Ala.Cr.App. 1986):
 "Replies in kind are generally permissible. Pittman v. State, 153 Ala. 1, 45 So. 245 (1907); Bates v. State, 468 So.2d 207 (Ala.Cr.App. 1985). Allowing replies in kind rests within the discretion of the trial court, McCullough v. State, 357 So.2d 397 (Ala.Cr.App. 1978), and wide latitude is usually given regarding replies in kind. [Citations omitted.] 'When the door is opened by defense counsel's argument, it swings wide, and a number of areas barred to prosecutorial comment will suddenly be subject to reply. What otherwise would have been improper argument by the prosecutor will be seen as harmless.' Defoor, Prosecutorial Misconduct in Closing Argument, 7 Nova L.J. 443, 469-70 (1982-83)."
Davis, 494 So.2d at 854-85. The comments by the prosecutor in this case were a reply in kind to defense counsel's remarks.
The trial judge is in the best position to "determine when discussion by counsel is legitimate and when it degenerates into abuse." Hurst v. State, 397 So.2d 203, 208 (Ala.Cr.App.),397 So.2d 208 (Ala. 1981). No abuse of discretion was found in this instance.
 IV
The appellant next contends that the trial court erred to reversal when it allowed the expert testimony of a criminalist to be received into evidence. Specifically, *Page 106 
the appellant argues that the trial court erred when it allowed the witness to testify over objection of defense counsel as to the relative positions of the parties at the time the deputies were shot. The appellant argues that this testimony invaded the province of the jury. He cites Smith v. State, 466 So.2d 1026
(Ala.Cr.App. 1985), in support of his position. However, Smith, is distinguishable from the case at bar. In Smith, the appellant claimed that the shooting of the victim was an accident. Other cases consistent with Smith also involved claims of accident or self-defense. See Ivey v. State,369 So.2d 1276, 1281 (Ala.Cr.App.), writ denied, 369 So.2d 1281
(1979); Padgett v. State, 49 Ala. App. 130, 136, 269 So.2d 147,152 (1972), cert. denied, 289 Ala. 749, 269 So.2d 154 (1972);Crawford v. State, 262 Ala. 191, 78 So.2d 291 (1955).
In the present case, the appellant does not contend that the shooting of the two deputies was an accident. Nor does he claim that he shot them in self-defense. Rather, the appellant raises an alibi defense, claiming that he had, at the time of the shooting of the two deputies, fled the area.
In Ex parte Davis, 554 So.2d 1111 (Ala. 1989), reh'g overruled, 569 So.2d 738 (1990), cert. denied, ___ U.S. ___,111 S.Ct. 1091, 112 L.Ed.2d 1196 (1991), Justice Kennedy, writing for our Supreme Court stated:
 "On cross-examination, Dr. Embry testified in more detail about the relative positions of the parties. The prosecutor and Dr. Embry even demonstrated the relative positions of the parties during the questioning. Petitioner argues that this testimony and demonstration invaded the province of the jury and were injurious to his substantial rights, citing Smith v. State, 466 So.2d 1026 (Ala.Crim.App. 1985); Wilson v. State, 430 So.2d 891 (Ala.Crim.App. 1983); and Ivey v. State, 369 So.2d 1276 (Ala.Crim.App. 1979), cert. denied, 369 So.2d 1281 (Ala. 1979). Each of the cases cited by the petitioner involved a homicide by shooting, and in each case the defendant claimed accident or self-defense; the prejudicial error in each case occurred because the relative positions of the parties constituted a material inquiry of critical importance. In this case, the petitioner's defense at trial was an alibi: that he was not at the scene of the crime and that someone else must have robbed, sodomized, and murdered the victim.
". . . .
 "We find a compelling distinction between the facts of those cases cited by petitioner and the facts and issues of this case; therefore, we hold that the trial court did not commit error injurious to the petitioner's substantial rights by allowing Dr. Embry to testify as to the relative positions of the parties."
Davis, 554 So.2d at 1114-1115. (Emphasis added.)
We likewise hold in the instant case that the trial court correctly allowed the testimony of the state's expert as to the relative positions of the parties at the time of the shooting.
 V
The appellant further contends that the trial court erred when it allowed the state to introduce exhibits 21 and 22 into evidence, after both parties had rested but before the jury had been charged or had begun deliberations.
The record reflects that exhibits 21 and 22, which were written statements made by the appellant, were referred to during the trial but because of an oversight were not entered into evidence. This court held in Harper v. State,420 So.2d 835 (Ala.Cr.App. 1982), that it is within the discretion of the trial court to reopen the case for the reception of further evidence after the state rests but before the jury is charged and begins deliberation. No error occurred here.
 VI
Finally, the appellant contends that the trial court erred in refusing to give a number of the appellant's written jury charges. Specifically, the trial court refused to give nine of appellant's requested jury charges, which dealt with aiding and *Page 107 
abetting and accessory liability. A thorough review of the record reveals that the court refused the nine requested charges because either they were covered in the court's oral charge or they were incorrect statements of law.
This court held in Stout v. State, 547 So.2d 894 (Ala.Cr.App. 1988), aff'd, 547 So.2d 901 (Ala. 1989), as follows:
 "Requested jury charges must be considered in the light of, or in connection with, all other charges given by the trial court. Page v. State, 487 So.2d 999, 1008 (Ala.Cr.App. 1986). The trial court's refusal to give written requested charges does not constitute error when the charges are covered in the trial court's oral charge, are confusing or misleading, are inapplicable or abstract, or are an incorrect statement of the applicable law."
Stout, 547 So.2d at 898-99.
Further, it appears from the record that the jury was thoroughly instructed by the trial court regarding aiding and abetting and accessory liability in Alabama.
For the reasons set out in part I above, this case is reversed and remanded to the Circuit Court for Mobile County for proceedings not inconsistent with this opinion.
REVERSED AND REMANDED.
All the Judges concur.