# Sanders *v.* The State.

## Indictment for Murder.

1. *Organization of petit jury in capital cases; when failure to put in hat the names of persons not summoned does not constitute error.*—In the drawing of a petit jury for the trial of a capital case, the failure to put in the hat, from which the drawing was had, the names of those jurors drawn on the special venire, who could not be found and were, therefore, not summoned, which fact is shown by the sheriff's return, constitutes no ground for quashing the venire.

2. *Homicide; when evidence as to height of deceased admissible.* On a trial under an indictment for murder, where the physician who examined the wounds received by the defendant in the rencounter which resulted in the homicide, describes said wound showing the course and direction of the pistol ball making such wound, it is not error for the court to admit evidence of the height of the deceased; it being shown

[Sanders v. The State.]

that the wounds upon the defendant were received in the difficulty that resulted in the death of the deceased, for whose killing the defendant .was being tried.

3. *Same; admissibility of testimony of non-expert as to character of wound.*—On a trial under an indictment for murder, it is competent for a witness who is not an expert, but who examined the wound inflicted upon the deceased, to describe such wound.

4. *Same; admissibility of evidence as to difficulty between deceased and defendant's brother.*—On a trial under an indictment for murder, when the evidence tending to show the connection of the defendant with the killing was circumstantial, evidence of motive for the killing is relevant and admissible; and, therefore, in such case, in connection with testimony tending to connect the defendant with the killing, it is permissible for the State to show that the deceased had a difficulty with the defendant's brother on the day previous to the day of the killing.

5. *Evidence; ruling thereon error without injury.*—Where an objection to a question asked in the trial of a criminal case is erroneously overruled, if the answer to such question was favorable to the defendant, no injury results to the defendant; and therefore, the overruling of the objection is error without injury.

6. *Homicide; when act of legislature inadmissible.*—On a trial under an indictment for murder, where the evidence shows that at the time of the killing the deceased was an overseer on a public road and the defendant was at work on said public road as a road hand under the deceased, a special act of· the legislature providing for the establishment opening, improving and working and keeping in good condition of public roads of the county wherein the homicide was committed, is immaterial and wholly irrelevant to the issue involved.

7. *Same; admissibility of evidence.*—On a trial under an indictment for murder, where it is shown that the brother of the defendant took part in the difficulty that resulted in the homicide, shooting several times at the deceased, and that the defendant and his brother had a difficulty with the deceased the day previous to the homicide, it is permissible for the State to show that after the difficulty on the day previous, the defendant and his brother left the place where the difficulty occurred, and each subsequently returned thereto, armed with a pistol; and in such case, statements made by the defendant at that time, or on the day of the difficulty, or the day previous thereto, tending to prove a con-

spiracy between him and his brother, are admissible in evidence.

8. *Homicide; charge as to self-defense.*—A person can not invoke the doctrine of self-defense, when he enters willingly into combat and fights willingly, not for his protection, but to gratify his passion by inflicting injury on his adversary; and this is true, even though he did not provoke the difficulty; and a charge which so instructs the jury is free from error.

9. *Same; charge of court to jury.*—On a trial under an indictment which charges the defendant and his brother with murder, a charge is free from error and properly given at the request of the State which instructs the jury that "if they believe from the evidence beyond all reasonable doubt, that in Perry county, Alabama, and before the finding of this indictment, John Green Sanders and Luke Sanders did unlawfully and with malice aforethought kill William Mullen by shooting him with pistols, then the defendant, John Green Sanders is guilty as charged in the indictment."

10. *Charge of court as to impeachment of witness.*—A successful impeachment of a witness does not, of itself, withdraw the testimony of such witness from the consideration of the jury; and a charge which instructs the jury that it does is erroneous and properly refused.

11. *Homicide; charge as to self-defense.*—On a trial under an indictment for murder, a charge which seeks to instruct the jury upon the theory of self defense, but omits to hypothesize an imperious neccessity for the defendant to take the deceased's life at the time he fired upon the deceased, is erroneous and properly refused.

12. *Same; charge of court to jury.*—In a criminal case, a charge is erroneous and properly refused which instructs the jury that "before the jury can convict the defendant they must be satisfied to a moral certainty not only that the proof is consistent with the guilt of the defendant, but that it is wholly inconsisent with any other rational conclusion, and unless the jury are so convinced by the evidence of the defendant's guilt that they would each venture to act upon that decision in matters of the highest concern and importance to his own interest, they must find the defendant not guilty."

13. *Same; charge as to sufficiency of evidence.*—In a criminal case, a charge is erroneous and properly refused which restricts the measure of proof required to convict the defendant to that furnished by the prosecution, instead of to the whole evidence in the case.

14. *Same; charge as to conspiracy.*—On a trial under an indict-
ment for murder, where there is evidence tending to show
a conspiracy between the defendant and his brother, a
charge is erroneous and properly refused which instructs the
jury that if they believe from the evidence that the defend-
ant and the deceased had a fight and he had inflicted a
serious wound on the deceased, and that the defendant's
brother came up and without the knowledge, consent or
connivance of the defendant, inflicted a mortal wound on
the deceased, then they should find the defendant not guilty.

APPEAL from the Circuit Court of Perry.

Tried before the Hon. JOHN MOORE.

The appellant in this case, John Green Sanders, was
jointly indicted with his brother, Luke Sanders, for
the murder of William Mullen. On motion of the de-
fendants there was a severance and the appellant in
the present case, upon separate trial, was convicted of
murder in the first degree and sentenced to be hung.

The bill of exceptions contains the following recital
as to the organization of the jury for the trial of the de-
fendant, the motions of the defendant to quash the ve-
nire, and the ruling of the court thereon: "Both sides
having announced ready for trial the court proceeded
with the selection of the jury as required by the statutes.
The sheriff was directed to draw one name at a time
from the hat, which he did. Before the jury had been
completed, and when only nine (9) jurors had been
selected, the sheriff announced to the court that all the
names in the hat had been drawn out of the hat. De-
fedant's counsel then stated to the court that the fol-
lowing persons, to-wit, Crum Stanley, W. E. Samples,
John Huff, W. Lawler, and Noll Burnett were on the
copy of the venire which was served on the defendant,
and had not been drawn from the hat, and also moved
the court to quash the venire because said five names
had not been put in the hat and drawn therefrom. On
the hearing of said motion it was shown that each of the
said five named persons were drawn by the presiding
judge, as special jurors in this case, and the sheriff
stated to the court that neither of the said five named
persons were summoned to appear as jurors, that they
were not found. His return on the venire also showed

that they were not summoned. The sheriff also stated he did not put said names in the hat to be drawn because they had not been summoned to appear as jurors. The court then refused to quash the venire to which ruling of the court the defendant duly excepted. Three jurors being necessary to complete the jury, the court ordered the sheriff to summon from the qualified citizens of the county, six persons, that being twice the number required to complete the jury, to appear instanter as jurors. Two of the persons so summoned were accepted as jurors, the other four being challenged. This left one juror to be selected to complete the jury. The court then ordered the sheriff to summon from the qualified citizens of the county two persons, that being twice the number to complete the jury to appear instanter as jurors, one of these was selected as a juror, thereby completing the jury. The defendant objected to the completion of the jury as above stated and duly excepted to the action of the court in completing said jury."

The evidence showed that at the time of the killing, William Mullen was road overseer in the county of Perry, and the defendant, John Green Sanders, and his brother, Luke Sanders, were hands working upon said road; that on the day prior to the killing there was a difficulty between William Mullen and Luke Sanders.

There was evidence on the part of the state tending to show that there was a conspiracy between the defendant, John Green Sanders, and his brother, Luke Sanders, to kill William Mullen; that on the day of the killing there was a dispute between the defendant and said Mullen as to the defendant having brought water, and said dispute resulted in the defendant and Luke Sanders firing upon and killing the said Mullen. There was some conflict in the evidence as to whether the defendant, John Green Sanders or his co-defendant, Luke Sanders fired the fatal shot.

The evidence of the defendant tended to show that at the time the shot which killed Mullen was fired, Mullen was advancing upon the defendant and had shot him down, and that the defendant fired in self defense.

Upon the cross examination of Jack Hartley, one of the witnesses for the defendant, he was asked the following question: "Did not the defendant on the evening of the day before the killing go up to Mullen and take Mullen's horse by the bridle and say to him, we will settle with you tomorrow?" The defendant objected to this question, upon the ground that it called for illegal, irrelevant and incompetent evidence, and because there was no evidence of any conspiracy between the defendant and his brother, Luke Sanders. The court overruled the objection and the defendant duly excepted. The witness answered he did not. The State then, upon further cross examination of said witness, asked him the following question: "Did you not so state to John Blackburn?" (naming the time and place). Witness answered he did not. Upon the introduction of John Blackburn as a witness, he testified that the witness, Hartley, did make such statement to him at the time and place designated.

Upon the cross examination of Charlie McLaughlin, he testified that he never heard the defendant and Luke Sanders, or either of them say that he or they would die and go to hell before they would take ane more of Mullen's foolishness, and that he did not know whether he so testified as a witness on the trial before the coroner.

Upon the introduction of one of the persons who was on the coroner's jury, he was asked if Charlie McLaughlin when he was examined as a witness before the coroner's jury, which was empannelled to investigate the killing of Mullen, did not testify that he heard both Luke Sanders and the defendant say that they would die and go to hell before they would take any of Mullen's foolishness? The defendant objected to this question, because it called for illegal and immaterial testimony, and was an attempt to impeach said witness, Charlie McLaughlin, on an immaterial matter. The court overruled the objection, and the defendant duly excepted. The witness testified that the said Charley McLaughlin did make such statement upon his examination before the coroner's jury. The other rulings of

[Sanders v. The State.]

the court upon the evidence, to which exceptions were reserved, are sufficiently stated in the opinion.

The court in its general charge instructed the jury as follows: "If the defendant did not provoke or commence the difficulty between Mullen and himself, and the defendant was in imminent danger of losing his life, or of suffering grevious bodily harm by Mullen, and if there was no reasonable way by which he could avoid that danger, then he would have the right to kill Mullen. But if the defendant entered into the fight willingly, and fought willingly, not for his protection, but to gratify his passion by inflicting injures on Mullen, he could not be acquitted on the plea of self defense even if he did not provoke or encourage the difficulty." The defendant separately excepted to this portion of the court's general charge, and also separately excepted to the court's giving, at the request of the State, the following written charge: "The court charges the jury that if they believe from the evidence beyond all reasonable doubt, that in Perry county, Alabama, and before the finding of this indictment, John Green Sanders and Luke Sanders did unlawfully and with malice aforethought kill William Mullen by shooting him with pistols, then the defendant John Green Sanders is guilty as charged in the indictment."

The defendant requested the court to give to the jury the following written charges, and separately excepted to the court's refusal to give each of them as asked: (A.) "I charge you that if the witness Jack Hartley has been successfully impeached by the State, it is your duty to disregard the testimony of said witness, Hartley." (5.) If the jury believe the evidence in this case they must find the defendant not guilty." (6.) If the jury believe from the evidence, that the deefndant and deceased were fighting, and there is no evidence to show that the defendant was in fault in bringing on the difficulty, and that the defendant retreated from the assaults of the deceased as far as he safely could, and that while the defendant was retreating and defending himself the best he could from the assaults of the deceased, the deceased knocked the defendant

down or shot him so that he could not longer carry on the fight, and when the defendant was so disabled and unable longer to injure the deceased, Luke Sanders same to the scene of the conflict and without the consent, knowledge or concurrence of defendant, shot the deceased from the effects of which shot the deceased died, then the jury will find the defendant not guilty." (7.) "Before the jury can convict the defendant they must be satisfied to a moral certainty, not only that the proof is consistent with the guilt of the defendant, but that it is wholly* inconsistent with any other rational conclusion, and unless the jury are so convinced by the evidence of the defendant's guilt that they would each venture to act upon that decision in matters of the highest concern and importance to his own interest, they must find the defendant not guilty." (10.) "The only foundation for a verdict of guilty in this case is that the entire jury shall believe from the evidence beyond a reasonable doubt that to a moral certainty that the defendant is guilty as charged in the indictment, to the exclusion of every probability of his innocence and every reasonable doubt of his guilt, and if the prosecution has failed to furnish such measure of proof, and so impress the minds of the jury of his guilt, they should find him not guilty." (14.) "I charge you that there is no evidence in this case tending to show a conspiracy between the defendant and Luke Sanders to do an unlawful act." (15.) "I charge you that the evidence in this case does not show *prima facic* that there was a conspiracy between the defendant and Luke Sanders to do an unlawful act or to kill Mr. William Mullen, the deceased." (23.) "If the jury believe from the evidence that John Green Sanders and the deceased were fighting, and he had inflicted a serious wound on the deceased, and that Luke Sanders came up and without the knowledge, consent, or connivance of the defendant inflicted a mortal wound on the deceased, then they should find the defendant not guilty."

B. M. ALLEN, for appellant.—The Circuit Court erred in overruling the appellant's motion to quash the

venire, it appearing that all of the names of the jurors . summoned for his trial were not put in the box or had preparatory to drawing the jury.—*Roberts v. State,* 68 Ala. 515; *Williams v. State,* 48 Ala. 85; *Nutt v. State,* 67 Ala. 180; *Bell v. State,* 59 Ala. 55; *Parsons v. State,* 22 Ala. 50; *Brazier v. State,* 44 Ala. 387; *Ex parte Chase,* 43 Ala. 303; *Johnson v. State,* 47 Ala. 9; *Boggs v. State,* 45 Ala. 30; 3 Chitty's Gen. Pr. 53, 54, 55.

Circumstances or facts which do not directly go to prove or disapprove the matter in issue are not admissible.—*McCormack v. State,* 102 Ala. 161; *State v. Wisdom,* 8 Porter, 511. . The test of the relevancy of evidence in criminal cases is whether it conduces to the proof of a pertinent hypothesis, a pertinent hypothesis being that which if sustained would logically influence the issue.—*Whittaker v. State,* 106 Ala. 130; *Curtiss v. State,* 118 Ala. 125.

The 10th charge requested by the defendant should have been given. It was proved by the court in the case of *Burton v. State,* 107 Ala. 108; *Brown v. State,* 108 Ala. 18; *Pickens v. State,* 115 Ala. 42.

CHAS. G. BROWN, Attorney-General for the State.

DOWDELL, J—The drawing of the names of the jurors, who should constitute the jury of twelve for the trial of the defendant, was in conformity with the requirement of statute.—Code, § 5009. The failure to put into the box, or substitute therefor, from which the drawing was to be had, the names of those jurors drawn on the special *venire,* who could not be found and therefore were not summoned, and which fact was also shown by the sheriff's return on the writ, was **no** ground for quashing the *venire,* and the court committed no error in overruling the motion to quash for that cause.

After testimony by Dr. C. A. Wilkerson, a practicing physician, describing the wounds inflicted on the defendant, and showing the course and direction of the balls making the wounds, it was not error to admit evidence of the height of the deceased, it being shown that

the wounds on the defendant were received in the difficulty that resulted in the death of Mullen, for whose killing the defendant was on trial.

It is competent for a witness, though a non-expert, to describe a wound which he has seen. The witness being asked by the State, "What was the character of that wound?" answered the question by describing the wound. This involved no opinion of the witness as to its character, but a simple description of what he had seen. There was no error in overruling the motion to exclude this evidence. The evidence in chief on the part of the State relating to the death of Mullen, the person charged in the indictment to have been murdered, and the connection of the defendant with the killing, was circumstantial. In such cases motive for this deed is a material inquiry, and evidence of motive though sometimes weak and inconclusive, if not too remote, is relevant and admissible. In connection with the other circumstances shown by the State, tending to connect the defendant with the killing, it was permissible for the State to show that the deceased had a difficulty with the defendant's brother on the day previous to the day of the killing.—*Kelsoe v. State*, 47 Ala. 573.

The evidence showed that at the time of the killing the deceased was overseer of a public road, and the defendant was at work as a road hand on the public road under the deceased as such overseer, and the evidence on the part of the defendant tended to show that the killing resulted from an altercation between the defendant and the deceased about the former's leaving his work, and bringing water in a bucket to the other hands where they were at work to drink. On the cross-examination by the State of the defendant's witness, Mc-Laughlin, the solicitor asked the question: "Had not Mullen given the hands orders not to go after water without his orders?" This question was objected to by the defendant, and the objection being overruled, the witness answered: "Not that I know of, I never heard of such an order." Even if the court erred in overruling the objection to the question, the answer was fav-

orable to the defendant and consequently no injury resulted to the defendant.

The court properly sustained the State's objection to the introduction in evidence of an act of the legislature entitled "An act, to provide the ways and means to establish, open and improve, work and keep in good condition the public roads in Perry county," approved February11, 1899, offered by the defendant. Such evidence was immaterial and wholly irrelevant to the issues involved.

It was developed upon the cross-examination by the State of some of the defendant's witnesses that Luke Sanders, the brother of the defendant, took part in the difficulty that resulted in the death of Mullen, and that he, Luke, shot several times at the deceased, emptying his revolver. This being shown by the evidence, it was permissible for the State to show, that after the difficulty on the day previous, the defendant and his brother Luke, came to the road, both armed with pistols, as tending to show a conspiracy. So too it was permissible to show in this connection any statement made by the defendant which tended to prove a conspiracy.

The objections to questions and answers in laying the predicates for the impeachment of defendant's witnesses were without merit and the court committed no error in overruling the same.

There was no error in that portion of the oral charge of the court excepted to by the defendant. That a person cannot invoke the doctrine of self-defense, when he enters willingly into the combat and fights willingly, not for his protection, but to gratify his passion by inflicting injury on his adversary, even though he did not provoke the difficulty, as a proposition of law in this State, is beyond question, and that is what the charge asserts.

The written charge given at the request of the State, correctly states the law, and the giving of it was free from error.

The successful impeachment of the witness Jack Hartley, did not withdraw his testimony from the consideration of the jury, and for that reason charge A requested by the defendant was bad, and the court properly refused to give it.

Charge No. 6 requested by the defendant, as an instruction to the jury upon the theory of self-defense is faulty in that it omits to hypothesize an imperious necessity for the defendant to take life at the time he fired upon the deceased. The charge in postulating an acquittal of the defendant on the facts hypothesized as to the shooting of the deceased by Luke Sanders is also faulty. The jury might have believed that the deceased died from the effects of the shots made by both Luke and the defendant. The facts as hypothesized do not exclude the idea that the deceased died from the effects of the wound given by the defendant as well as from the shot by Luke. Moreover, the charge calls for an acquittal of the defendant when on the facts as postulated the defendant might have been convicted of an assault with intent to murder.

We need only say of charge 7 requested by the defendant that like charges have several times recently been condemned by this court.

Charge No. 10 is faulty in restricting the measure of proof required to convict to that furnished by the prosecution, instead of to the whole evidence in the case. In this case much of the criminating evidence was furnished by the defense. In the case of *Brown v. State,* 118 Ala. 111, a charge of which charge 10 is a substantial, if not an exact copy, was pronounced good. But in that case it is not shown that any evidence at all was furnished by the defense, and for that reason the charge when referred to the evidence—the only evidence being what was furnished by the prosecution—was pronounced a proper charge.

Charge No. 25 refused to the defendant, is too plainly erroneous to call for comment.

There was evidence, though inconclusive, tending to show a conspiracy between the defendant and Luke Sanders, and for this reason other charges refused to the defendant invaded the province of the jury, and were therefore properly refused.

We find no error in the record, and the judgment of the Circuit Court must be affirmed.