# Reid *v.* The State.

## *Murder.*

(Decided February 6, 1913. 61 South. 324.)

1. *Evidence; Opinion; Nature of Wound.*—Expert knowledge not being necessary to justify one in testifying as to the range of wounds, it was competent for one who saw deceased immediately after he was shot, and who examined the wound, to testify that the large wound on the right of decedent's spinal column went straight in, and the small wound on the edge of the shoulder blade ranged upward and stopped at the point of his shoulder, and that the wound on the left of his spinal column ranged to the left and stopped at the point of the hip.

2. *Homicide; Instructions; Self-Defense.*—A charge asserting that if the situation when accused arrived was such as to impress the mind of a reasonable man that his wife was in danger of losing her life, or of suffering great bodily harm at the hands of decedent, and accused was free from fault in bringing on the difficulty between his wife and the decedent, the jury should acquit, omitted defendant's bona fide belief that his wife was in great danger, as a condition to killing for her protection, and was consequently properly refused.

3. *Charge of Court; Assuming Facts.*—A charge assuming that defendant had a good character was properly refused as that was a question for the jury under the evidence, notwithstanding there was no conflict.

4. *Same; Weight of Evidence.*—Charges which lay undue emphasis or call particular attention to parts of the evidence, are properly refused.

(Anderson, J., dissents in part.)

[Reid v. The State.]

APPEAL from Lee County Law and Equity Court. Heard before Hon. LUM DUKE.

Bartow Reid was convicted of murder, and he appeals. Affirmed.

The following charges were refused to defendant:

"(2) The defendant has proven without conflict in this case a good character. I charge you that you must consider this proof, and I charge you that you may consider it together with all the other evidence in the case, even to the generation of a reasonable doubt, that would authorize you to find the defendant not guilty."

"(4) I charge you, gentlemen, that, if you believe from all the evidence in this case that defendant's wife fired the pistol shot, it would make no difference how those pistol wounds were inflicted, if you believe from the evidence that the situation, at the time the defendant came on the scene, was such as to impress the mind of a reasonable man that defendant's wife was in danger of losing her life, or suffering great bodily harm at the hands of the deceased, at the time the fatal shot was fired, if you further believe from the evidence that defendant's wife was free from fault in bringing on the difficulty between her and deceased."

BARNES & DENSON, and THOMAS D. SANFORD, for appellant. The witness was not shown to be such an expert in gunshot wounds as to be qualified to testify as to the range of such wounds. Counsel discuss the charges refused with the insistence that their refusal was error to reversal, but cite no authority in support of their contention.

R. C. BRICKELL, Attorney General, and W. L. MARTIN, Assistant Attorney General, for the State.

SAYRE, J.—Defendant was convicted of murder and sentenced to suffer death. At the trial he did not deny the killing, but sought to excuse himself on the ground that it had been done in defense of his wife. Apart from the parties, there were no eyewitnesses to the difficulty. Deceased had three wounds in the back, one large wound inflicted by a shotgun and two small ones made by shots from a pistol. 'One Wilson, a witness for the state, saw the body of deceased shortly after death, saw the wounds upon it, and testified that, in order to stop the flow of blood from the large wound, he had "stuffed about a pound and a half or two pounds of cotton in it." The state asked this witness, "What was the range of the wounds on deceased's body?" He answered, "That the large wound, on the right of deceased's spinal column, went straight in; that the small wound, at the lower edge of deceased's shoulder blade, ranged upward and stopped at the point of deceased's shoulder; that the small wound, on the left of deceased's spinal column, ranged to the left, and stopped at the point of deceased's hip." Timely objections were taken and exceptions reserved to the allowance of this testimony. The objections were that the witness had not been shown to be an expert on the subject of gunshot wounds; that it had not appeared that witness had any means of knowing the range of the wounds; and that his statement was a mere conclusion, without facts to support it. In the circumstances of the case shown by the evidence, it is impossible to say that this testimony did not touch upon a most material point. But it is equally impossible to affirm that the witness did not know whereof he spoke. No expert knowledge was necessary. If he observed the course or range of the wounds—and the necessary implication was that he did—he could state the fact. If the competency of his

statement was doubted as not being the result of actual observation or as resting in debatable inference, the invalidating facts should have been developed by a cross-examination. On its face, the testimony was competent, and there was no error in the court's ruling.

The charge requested by defendant in reference to the proof of good character (charge 2) was clearly erroneous. It assumes that defendant had a good character, whereas that was a matter to be found by the jury, even though all the witnesses concurred in the statement that they knew defendant's general character in the community where he lived as a peaceable, law-abiding citizen, and that it was good. However phrased, this testimony could only have expressed the judgment or opinion of the witnesses. The true meaning of their testimony was that the witnesses thought there was in the community a general opinion concerning defendant, he had a reputation, which tended to prove his good character, or, it may be said, did prove it to the satisfaction of the witnesses. A community's estimate of a defendant's moral constitution may be greatly persuasive of his innocence; but the nature and evidence of the general estimate are such that the fact of its existence and its value, when proved, must be referred to the judgment of the jury, notwithstanding the unanimous expressions of witnesses.

Moreover, the charge, though it undertook in a way to have the jury bring into account all the evidence in the case, laid undue and misleading stress and emphasis upon the evidence of good character. It was refused without error.

Charge 4, requested by defendant, pretermitted defendant's bona fide belief that his wife was in great danger. Without such belief, he was not to be excused for taking the life of deceased, although the circum-

stances were such as might have impressed the mind of a reasonable man with that belief. This has been frequently decided. The charge may be faulty in other respects.

Able counsel have had charge of defendant's case, and they have briefed no other point against the conviction. Nevertheless, the entire record has been examined. No error is found; and the judgment and sentence of the trial court must, so far as we are concerned, be executed.

Affirmed. All the Justices concur, except ANDERSON, J., who dissents on the question raised on charge 2. He therefore holds that the judgment should be reversed.

ANDERSON, J.—(dissenting in part).—To my mind the defendant's refused charge 2 asserts the law and speaks the truth. It has been often held reversible error to refuse identical charges, with the first portion omitted.—*Taylor v. State,* 149 Ala. 32, 42 South. 996. Therefore the only excuse for justifying the refusal of this charge is because of that part which instructs that defendant has "proved, without conflict, a good character." The defendant had the right to have the jury instructed as to the effect of his undisputed evidence. He not only introduced evidence of good character, but he proved a good character beyond dispute or controversy. If the court cannot be required to charge upon the effect of the undisputed evidence without invading the province of the jury in the present case, it is difficult to suppose a case wherein either side would be entitled to the general charge, or to one upon the effect of the evidence. The headnote 8, in the case of *Davis v. State,* 152 Ala. 25, 44 South. 561, is inaccurate, as the only charge to which it could relate was charge 22, which

[Pope v. The State.]

left it open to the jury as to whether or not defendant was a man of good character, but which was evidently condemned because it pretermitted considering the evidence of good character with the other evidence.

Charge 2 in the case of *Abrams v. State*, 155 Ala. 105, 46 South. 464, was condemned for other reasons than the fact that it assumed the result of the evidence of good character, whether believed or not. Neither the opinion or the report of this case states whether or not the proof of good character was disputed. Here the evidence was undisputed that the defendant bore a good character; and I think the point made against the charge is entirely too technical to deprive this defendant of the benefit of an instruction as to the effect of such a highly important feature of his defense. I think that the case should be reversed, and dissent from the holding of the majority.