# Mathis v. The State.

## Murder.

(Decided November 28, 1916.   73 South. 122.)

1. **Evidence; Expert; Qualification.**—The question as to whether a wit- ness possesses the requisite qualifications to speak as an expert, is a prelim- inary question largely within the discretion of the trial court.

2. **Same.**—The question of the range of a bullet or of a load from a gun,. does not necessarily call for expert knowledge, but is open to observation by non experts, and may be testified to as any other fact.

3. **Same; Opinion.**—It is not competent for a witness, whether expert or non expert, to draw inferences for the jury from the slant or angle of a gun shot wound as to the relative position of combatants when the shot was fired,. as that would be an invasion of the province of the jury.

4. **Same.**—The statements of a physician that the load "didn't look to be- shot right straight in front, it looked to be a little bit that way (indicating)," was not improper as invasive of the province of the jury, but an effort. merely to describe the character of the wound and the range the load took.

5. **Homicide; Dying Declarations.**—If it appears that deceased was under a sense of impending death, and had abandoned hope of recovery, although. not entirely rational because of drugs or other causes, this was sufficient as. a predicate for dying declarations; the mental weakness going to the weight. and credibility of such declarations, and not to their competency.

6. **Same.**—If a declarant's mind was so affected by drugs or other causes. as to render him incompetent as a witness pro hac vice, this would justitfy the rejection of the declaration.

7. **Same.**—Rationality is presumed, and the burden is not on the state to show that a deceased was rational at the time he uttered the dying declara- tions; the burden is upon defendant to show that he was not rational.

8. **Appeal and Error; Harmless Error; Evidence.**—Any error in excluding- the answer of a witness is rendered harmless where the witness is permitted to give the answer later.

9. **Homicide; Threats.**—Where deceased's name was Daniel, threats made- by defendant that he was going to kill one of the Daniels were not too indef- inite to be inadmissible.

10. **Same.**—Whether such threats had reference to deceased was a ques-- tion for the jury taken in connection with the other evidence.

11. **Witnesses; Impeachment; Predicate.**—Where the question was "that. same evening of the shooting, nobody being present but you and these three- men (naming them), and after you had carried the shot man up there (re- ferring to a certain house), didn't you say, etc.?" was a sufficient predicate· as it apprised the witness of the time, place anad persons involved.

12. **Same; Examination.**—Where matter has been testified to on direct examination, it is not error to refuse to permit a repetition thereon on re-- direct examination.

[Mathis v. The State.] .

13. **Same; Leading Question.**—It is not error to sustain objection to a leading question.

14. **Appeal and Error; Objection; Waiver.**—Where an objection is made to a question and is put upon specific grounds, all other objections are waived.

15. **Charge of Court; Covered by Those Given.**—It is not error to refuse instructions substantially covered by instructions given.

16. **Homicide; Instructions; Retreat.**—A charge that the evidence in the case is without conflict that defendant fired the fatal shot when he was within the curtilage of his own residence, and that he was under no duty to retreat, not only pretermitted the question of freedom from fault, but was otherwise faulty.

17. **Same; Self Defense.**—Charges upon self defense which fail to hypothesize an honest belief in the apparent danger, and defendant's freedom from fault, are properly refused.

18. **Same.**—A charge that if this defendant was free from fault in bringing on the difficulty, and was in actual danger of losing his life, or suffering great bodily harm; or if he had a bona fide belief in such danger when he killed deceased, he should be found not guilty, was properly refused, since a defendant may have been in actual danger when he killed deceased, but it may not have been imminent, and the bona fide belief in danger should have been predicated on the reasonableness of that belief.

19. **Charge of Court; Inference.**—Charges asserting that it is a well settled rule of law that if there be two reasonable constructions which can be given to the facts proven, one favorable and the other unfavorable to defendant, it is the duty of the jury to give the favorable rather than the unfavorable inference, have been repeatedly condemned.

20. **Same; Reasonable Doubt.**—A charge that, if from the testimony, there is a probability of defendant's innocence, that is a just ground for reasonable doubt, entitling him to an acquittal, is proper.

21. **Homicide; Degree.**—Charges that on the evidence the jury could not find defendant guilty of murder in the second degree and manslaughter in the first degree, were properly refused, since they sought to withdraw the degree of crime from the jury.

APPEAL from Houston Circuit Court.

Heard before Hon. H. A. PEARCE.

John Mathis was convicted of murder in the second degree, and he appeals. Affirmed.

Most of the facts sufficiently appear. Nelson Daniels, being cross-examined, was asked: "You knew at that time (referring to the preliminary trial) when that trial was had here before Judge Butler, everything that you know now, didn't you?" The witness answered, "Yes, sir," and was asked, "You didn't go on the stand and testify in that case, did you?" The state objected to this question, the court sustained the objection, and defendant made known to the court that, if permitted to do so, the wit-

[Mathis v. The State.]

ness would testify that he did testify in that case, but the court still sustained the objection. The bill of exceptions then contained the following: The witness, continuing, testified as follows: That he testified in the preliminary trial before Judge Butler that he testified about what he asked him, and he guessed that he did testify then what he was testifying now; that he testified before Judge Butler that his boy told him he was going to die, and that after he told him that, he then told him that John Mathis shot him. The following charges were refused to defendant:

(6) The court charges the jury that the evidence in this case is without conflict to the effect that defendant fired the fatal shot when he was within the curtilage of his own residence, and that he was under no duty to retreat.

(2) If the jury have a reasonable doubt whether the circumstances were such as to impress the mind of a reasonable man that he was in great danger of bodily harm, at the time he fired the fatal shot. then they must give the prisoner the benefit of that doubt, and acquit him.

(3) The court charges the jury that if defendant is free from fault in bringing on the difficulty and was in actual danger of losing his life or suffering great bodily harm, or if he had a bona fide belief that he was in actual danger of losing his life or suffering great bodily harm when he killed deceased, then they should find defendant not guilty.

(12) It is a well-settled rule of law that if there be two reasonable constructions which can be given to the facts proven, one favorable and the other unfavorable to the party charged with the crime, it is the duty of the jury to give that which is favorable rather than that which is unfavorable to defendant.

(14) The court charges the jury that if from the testimony there is a probability of defendant's innocence, that is a just ground for a reasonable doubt, and defendant should be acquitted.

(14½) The court charges the jury that if they believe the evidence in this case, they cannot find defendant guilty of murder in the second degree.

(20) The law gives a person the right to use such force as may be reasonably necessary under the circumstances by which he is surrounded to protect himself from great bodily harm as it does to prevent his life from being taken. He may excusably

use such necessary force to save himself from any felonious assault.

FARMER & FARMER, for appellant. W. L. MARTIN, Attorney General, and HARWELL G. DAVIS, Assistant Attorney General, for the State.

EVANS, J.— (1-4) Appellant was convicted of murder in the second degree for killing one Simmie Daniels. It is insisted that the trial court erred in the admission of the testimony of Dr. J. H. Flowers, tending to prove the range of the shot, in that the witness had not qualified as an expert. Dr. Flowers testified that he was a practicing physician in Houston county, and had professionally attended the deceased when he was shot. Whether a witness is shown to possess the requisite qualifications to speak as an expert is a preliminary question, largely within the discretion of the trial court.—*Tesney's Case,* 77 Ala. 33; *White's Case,* 133 Ala. 122, 126, 32 South. 139; *Barlew's Case,* 5 Ala. App. 290, 294, 57 South. 601. Aside from this, the question of the range of a bullet or load of a gun does not necessarily involve or call for expert knowledge; it may, perchance, be open to observation or be ascertainable upon examination by a nonexpert and testified to as any other fact.—*Reid's Case,* 181 Ala. 14, 61 South. 324; *Sanders' Case,* 134 Ala. 74, 32 South. 654. It is not competent for a witness, expert or nonexpert, to draw inferences for the jury from the slant or angle of the wound as to the relative positions of the combatants when the fatal shot was fired. This would be invasive of the province of the jury and a matter of which they would be quite as competent to judge as the witness, having been given a description of the wound.—*Dumas' Case,* 159 Ala. 42, 49 South. 224, 133 Am. St. Rep. 17; *McKee's Case,* 82 Ala. 32, 2 South. 451. But we do not think the testimony of Dr. Flowers trenched upon the prerogative of the jury in this respect in his answer that: "It [the load] didn't look to be shot right straight in front; it looked to be a little bit that way (indicating)."

This was merely an effort to describe the character of the wound and the range the load took.

(5-7) It is argued that a proper predicate was not laid for the introduction of the dying declaration of the deceased, because it is not shown that deceased was rational at the time.

[Mathis v. The State.]

While dying declarations should be cautiously received, it is sufficient if, from the preliminary facts, it is made to appear to the trial court that at the time of the declaration by the deceased, he was under a sense of impending death, and had abandoned all hope of recovery. If at the time of the declaration the declarant was flighty or not entirely rational from opiates, drugs, or other cause, that fact could be shown, and would go to the weight and credibility of the declaration, instead of to its competency.—*Gilmer's Case*, 181 Ala. 23, 61 South. 377; *Justice's Case*, 99 Ala. 180, 13 South. 658; Underhill's Criminal Evidence (2d Ed.) § 112. Of course, if the preliminary facts should reveal that, at the time of the supposed declaration, the state of declarant's mind or .reason was such as to render him pro hac 'vice incompetent as a witness, this would be a matter for the trial court and, on a proper showing, justify the rejection of the so-called declaration. The burden, however, is not upon the state in presenting its predicate to show that the declarant was rational, for this will be presumed; it is upon the defendant to show that he was not.

(8) Conceding the materiality of the question to Nelson Daniels (transcript page 7), as to whether he had testified on the preliminary examination, the ruling of the court was rendered innocuous by witness' answer to the same matter on page 8, transcript.—*Francis' Case*, 188 Ala. 39, 45, 65 Southfl 969.

(9, 10) The threats of the appellant—as testified by several witnesses—that he was going to kill one of the Daniels were not improperly admitted as being too indefinite. Whether these threats, when taken in connection with the other evidence, had reference to the deceased, was a question for the jury.—*Montgomery's Case*, 160 Ala. 7, 24, 49 South. 902; *Olive's Case*, 2 Ala. App. 77, 57 South. 66; *Ford's Case*, 71 Ala. 385, 396.

(11) The objection to the question propounded to Will Kannady on the ground of the insufficiency of the predicate was not well taken. The question reads: *"That same evening of the shooting,* nobody being present but *you and these . three men* [Wes Jackson, Jack Daniels, and Nelson Daniels], and after you had carried the shot man up *there* [Nelson Daniels' house] didn't you say,"* etc.

The above italicized portions of the question apprised the witness of the time, place, and persons involved. In *Burton's Case*, 115 Ala. 1, 22 South. 585, a predicate was held sufficiently

definite and certain that asked the witness if she had not made certain statements before the coroner's inquest and before the grand jury. See, also, *Phillips' Case*, 11 Ala. App. 168, 65 South. 673.

(12, 13) It is insisted that the court erred in sustaining the objection to the question asked defendant's witness Will Kannady on redirect examination: "You say he [deceased] had his knife in his hand when he went in that gate, when he opened that gate?"

The same matter was testified to on this witness' direct examination, and the court cannot be put in error for not permitting a repetition of it on the redirect examination, nor from the fact that the question, as framed, was leading.

(14) The question by the state to impeaching witness Jake Daniels was faulty, in that it did not substantially follow the predicate laid in the testimony of witness Kannady, directing the mind of the impeaching witness with definiteness to the particular matters about which it was sought to impeach Kannady (*McDaniel's Case*, 166 Ala. 7, 52 South. 400) ; but this particular objection was waived by assigning other objections.

(15-21) Written requests to charge 1, 5, and 7 were substantially covered by given charge No. 4. Refused requests 18 and 19 were substantially covered by given charge 17. Request No. 6 was properly refused as pretermitting the question of freedom from fault, and is otherwise faulty. Request 2 failed to hypothesize an honest belief in the apparent danger and freedom from fault. Request 3 is faulty; the appellant might have been in actual danger when he killed deceased, but it may not have been imminent; and, further, the "bona fide belief" in danger should have been predicated upon reasonableness of that belief. Request 12 was properly refused; it has been repeatedly condemned.— *Comptons' Case*, 110 Ala. 24, 20 South. 119; *Gibson's Case*, 91 Ala. 64, 9 South. 171; *Toliver's Case*, 94 Ala. 111, 10 South. 428; *Thomas' Case*, 106 Ala. 19, 17 South. 460; *Simmons' Case*, 171 Ala. 16, 54 South. 612. Request 14 asserts a correct principle of law. See *Fleming's Case*, 150 Ala. 19, 43 South. 219; *Gainey's Case*, 141 Ala. 72, 37 South. 355; *Harris' Case*, 8 Ala. App. 33, 62 South. 477; *Davis' Case*, 7 Ala. App. 122, 61 South. 483; *Adams' Case*, 175 Ala. 7, 58 South. 591. This charge, however, was substantially covered by given charges 9A, 10A, and 13. Request 14½, instructing that the jury could not find the

[Woods v. The State.]

defendant guilty of murder in the second degree, and request 15, instructing that the jury could not find the defendant guilty of manslaughter in the first degree, were properly refused. The degree of the crime was for the jury, and these charges sought to withdraw this question from their consideration.—*Seams' Case*, 84 Ala. 410, 4 South. 521. Request 16 was properly refused, being a request for the general affirmative charge. Request 20—copied, doubtless, from *Twitty's Case*, 168 Ala. 59, 53 South. 308, or *Black's Case*, 5 Ala. App. 87, 59 South. 692, with the omission of the word "same," preceding the word "right"—was held in those cases to be good. The omission of the word "same," preceding and qualifying the word "right," detracts from the clearness or perspicuity of the charge, having a tendency to mislead. Even if this were not so, we would be impelled to the conclusion that the refusal of this charge did not, under rule 45, "probably injuriously affect the substantial rights" of appellant, since given charges 2A, 5A, and 17 substantially instructed upon appellant's rights in the premises. Request 21 has been, in substance, approved in *Taylor's Case*, 149 Ala. 32, 42 South. 996, *Watts' Case*, 117 Ala. 24, 59 South. 270, and *Pate's Case*, 150 Ala. 10, 43 South. 343, but was substantially covered by given charge 11A.

There being no prejudicial error in the record, the judgment below is accordingly affirmed.

Affirmed.