217 So.2d 821

**James C. JORDAN**

v.

**STATE.**

**I Div. 301.**

Court of Appeals of Alabama.

Jan. 7, 1969.

Rehearing Denied Feb. 18, 1969.

MacDonald Gallion, Atty. Gen., and John A. Lockett, Jr., Asst. Atty. Gen., for the State.

Grady W. Hurst, Jr., Chatom, for appellant.

PRICE, Presiding Judge.

The indictment charged murder in the first degree. Conviction was for the offense of manslaughter in the second degree, with punishment fixed by the jury at imprisonment in the County Jail for ninety days.

The defendant testified he was asleep at home with his wife and children when the deceased, who was his second or third cousin, came to his home about 2:30 or 3:00 o'clock on the morning of October 29, 1966. He was knocking on the door and calling to Virginia Jordan, defendant's wife, to get up and open the door. She went to the door and deceased offered her $2.00 to "go with him." She tried to get deceased to leave

but he put his foot in the door and refused to go. He told her she was lying when she said her husband was at home. This went on for awhile before defendant got up. Finally, he got out of bed, went to the door and told deceased to get off his porch and go home, that he didn't want to hurt him. Deceased wouldn't leave and finally defendant "blasted" him with a shot gun. The deceased was hit in the legs and fell in the yard, where he died.

Sheriff Sullivan testified that he had a conversation with defendant shortly after the killing in which he stated:

"'Well, said, He has been running around with some other woman up here and he come to my house this morning and offered my wife money to go with him, and said he didn't intend to kill him. He said, I just wanted to send him home crippled where his wife and people would know where he had been.'"

Defendant's following written requested charges were refused:

"Charge No. 5

The Court charges the jury that if you believe the evidence in this cause you cannot convict the Defendant of manslaughter in the second degree."

"Charge No. 9

The Court charges that the deceased was a trespasser at the time of the fatal shooting and the defendant has a right to use such force as was necessary to put the deceased off his premises."

The argument in brief as to the refusal of charge 5 is,

"where the evidence showed that the crime committed was either murder or manslaughter in the first degree, or it was justified, defendant is entitled to have general affirmative charge on manslaughter in the second degree requested in writing given; and where it is refused and the defendant is convicted only of manslaughter in the second degree, the case is due to be reversed and rendered."

■ We do not agree. In Baker v. State, 40 Ala.App. 241, 114 So.2d 290, cert. denied, 269 Ala. 693, 114 So.2d 292, the argument was that the verdict of manslaughter in the first degree was a compromise verdict and that defendant was due the affirmative charge as to that offense. We quoted from Houlton v. State, 254 Ala. 1, 48 So.2d 7, 8, the court's holding that under an indictment charging murder in the first degree, an accused may be found guilty of any lesser offenses included therein, such finding being within the province and discretion of the jury hearing the case.

In Duncan v. State, 30 Ala.App. 356, 6 So. 2d 450, the court said:

"'An indictment for murder in the statutory form includes manslaughter in the first and second degrees. The plea of not guilty puts in issue these several degrees of the charge of homicide included in the indictment.'"

$*$ $*$ $*$ $*$ $*$ $*$

"'When death is produced by an intentional blow, but without malice or the intention to kill, if the blow was wrongful, this would be manslaughter in the second degree, commonly called "involuntary manslaughter."''"

Sawyer v. State, 20 Ala.App. 504, 103 So. 309; Gore v. State, 22 Ala.App. 136, 114 So. 791.

■ Refused charge no. 9 was covered by the following portions of the court's oral charge:

"The court charges the jury that one who intrudes or trespasses upon a dwelling with felonious intent or in such manner as to create a reasonable belief in the mind of the occupant that such is his purpose, may be killed, and the homicide will be in self defense.

"The law regards with great jealousy and vigilance the peace and security of the

dwelling. A trespass upon it is more than a trespass upon property; it is the same as a trespass upon a person.

"A man's house is regarded in the law as his castle, his place of refuge. So solicitous is the law in the preservation of the sanctity and inviolability of one's house, that it has placed about it every safeguard to prevent unwarranted entries.

\*   \*   \*   \*   \*   \*

"The court charges the jury that if the deceased intruded or trespassed upon the defendant's dwelling, including the yard thereof, offering the defendant's wife money to have sexual relations with him, the defendant had a right to use such force as was necessary to put the deceased off his premises."

Ardis Taylor, a witness for the State, testified he had a conversation with defendant on Friday morning before deceased was killed that night. Defendant said to him:

"Jacob, my old lady is messing up on me \*   \*   \*   It's a Turner."

Defendant said he was going to kill him. Appellant insists the threat was too indefinite to be admitted in evidence, since there was no direct reference to defendant.

In Mathis v. State, 15 Ala.App. 245, 73 So. 122, the court said:

"The threats of the appellant—as testified by several witnesses—that he was going to kill one of the Daniels, were not improperly admitted as being too indefinite. Whether these threats, when taken in connection with the other evidence, had reference to the deceased, was a question for the jury."

We find no reversible error in the record. The judgment is due to be and hereby is affirmed.

Affirmed.

JOHNSON, J., not sitting.

