This case was originally assigned to another judge on the Alabama Court of Criminal Appeals. It was reassigned to Judge Cobb on January 17, 1995.
The appellant, Mark Hamilton Lane, was indicted for murder in violation of § 13A-6-2, Code of Alabama 1975. A jury convicted Lane of manslaughter for the stabbing death of Benny James Rembert, and the trial court sentenced him to 20 years in prison.
Because the appellant does not question the sufficiency of the evidence, we will give only a brief summary of the facts. In April 1992, Lane, a skinhead, was living at what was known as the "WAR (White Aryan Resistance) *Page 827 
house" in north Shelby County. The weekend of April 18, 1992, the group was celebrating Adolph Hitler's birthday, when four of them, including Lane, decided to go "bashing." According to Jacob Bowden, a former skinhead who testified at trial, "bashing" means "going out and beating up people who were of other races or ideologies." Bowden said that he knew the four — Lane, Malcolm Driskell, Earl Hardeman, and Hardeman's girlfriend, C.W., a juvenile — were going bashing at 24th Street and Morris Avenue in Birmingham.
Birmingham Police Officer Andrew Russo testified that on April 18, 1992, at about 3:55 a.m., he responded to a call from CSX Railroad concerning an accident at the train track at 24th Street and Morris Avenue. Russo said when he got to the scene, he saw a black male lying inside the train tracks. The man had been run over by a train. The man's left leg was lying over the track, and his foot had been amputated when the train ran over him. Russo said he also noticed that there was a small trail of blood leading from a spot under a bridge to the body on the train tracks.
The doctor who performed the autopsy on Rembert testified that the cause of death was a stab wound to the chest. He added that in his opinion, Rembert's foot had been amputated after he died.
Birmingham Police Officer Cetonia Parham testified that while on patrol at about 3:30 a.m. April 18, she and her partner spotted a car on First Avenue South in Birmingham. They pulled behind the car, a blue Malibu, and saw something thrown from the window on the passenger side. The officers stopped and picked up the object, which was a knife. They then followed the car, Parham said, and stopped it about a block away from where they had retrieved the knife. Hardeman and C.W. were in the front seat and Driskell and Lane were in the back. All four were searched. Weapons were found on each of them, and another knife was found in the car. The four were taken into custody and the car was impounded.
Sherea Geddings testified that she knew Lane from the WAR house. She stated that in February 1992, she left the house and went to Hendersonville, North Carolina, where she stayed with members of the Ku Klux Klan. Geddings said that in April Lane arrived at the house in North Carolina and told her that he needed a place to stay for a while. She testified that Lane told her that he and three others had been involved in a murder, specifically, he said that he and three others had stabbed a "bum."
Anthony Geddings, Sherea's husband, testified that he and several others drove Lane to a "safe house" in North Carolina. Anthony Geddings said that on the way to the safe house, Lane told him that he, Hardeman, Driskell, and C.W. had gone into a "bum camp" and that Lane had stabbed one of the men there.
Lane testified that on the day of the night Rembert was killed, he had started drinking beer and vodka at about 3 or 4 p.m. and did not stop until he passed out in Hardeman's car. He said that he remembered only falling asleep in the back seat of the car and waking up when C.W. almost wrecked the car. Lane testified that he did not know someone had been killed until he arrived in North Carolina, and he did not know the police were looking for him until he telephoned his stepfather. He then turned himself in to North Carolina authorities.
 I
Lane contends the trial court erred in denying his motion for a mistrial, which was based on the district attorney's comment during closing arguments that, Lane says, concerned facts not in evidence. During the prosecutor's closing argument, the following occurred:
 "MR. BROWN [prosecutor]: Then he talks about blood. Well there's no blood on there. Well, the blood is on the towel. There's no blood on his clothes. Well, unfortunately we'll never know.
 "MR. TURBERVILLE [defense counsel]: I object to that. That towel is not in evidence, if it please the court. They did not do any testing on it. I ask for a mistrial.
"THE COURT: Overruled." *Page 828 
The night Rembert was murdered, police stopped the car in which Lane was riding because they saw an object being thrown from the car's window. The object was a knife. After being searched, the four people in the car, including Lane, were taken into custody and the car was impounded. Birmingham Police Officer Charles Underwood testified that while he was processing the car, he found a hand towel on the rear passenger side floorboard. He testified that the towel was stained with what appeared to be blood. Therefore, the appellant's contention that the prosecutor's argument referred to a fact not in evidence is without merit.
 II
Lane also contends that the trial court erred in denying his motion for a mistrial based on the district attorney's eliciting testimony concerning alleged prior bad acts of the defendant. Specifically, Lane argues, the prosecutor should not have been able to question witness Bill Riccio, owner of the WAR house, and Lane concerning the death of Ronald Mayes by stabbing, two days before Rembert was killed. Mayes was also a black man and the attack on him occurred in the same area of the city where Rembert was killed. Malcolm Driskell, one of Lane's codefendants in this case, was convicted of stabbing Mayes, but Lane was never charged in connection with that crime. Riccio was questioned as to whether he was aware that Lane was driving Driskell the night Mayes was stabbed. The district attorney brought up the same incident while cross-examining Lane. The rule in Alabama is that evidence of other or collateral crimes committed by a defendant is not admissible at his trial for a specific offense. McLemore v.State, 562 So.2d 639 (Ala.Crim.App. 1989); see also, C. Gamble, McElroy's Alabama Evidence, § 69.01(1) (4th ed. 1991). Such evidence can be admissible, however, if it falls into one of the exceptions to the general exclusionary rule, such as motive, intent, identity, or common plan, scheme, or design.Williamson v. State, 629 So.2d 777, 780 (Ala.Crim.App. 1993).
In this case, the testimony that Lane was driving the truck Driskell was riding in the night Driskell stabbed Mayes would be admissible to show Lane's intent and motive to kill Rembert. Intent was at issue because Riccio and Lane had testified that neither the skinheads, nor Lane personally, advocated violence as a method of achieving the goals of white supremacy or separation of the races. This evidence of the previous attack provided evidence of the appellant's intent to commit the present offense. White v. State, 527 So.2d 1349
(Ala.Crim.App. 1988).
Further, this evidence was admissible to show the appellant's motive to commit this offense. Because both offenses were apparently motivated by the same racial animus, evidence concerning the offense against Mayes was probative of the appellant's motive for killing Rembert. "[E]vidence tending to establish motive is always admissible." Jordan v.State, 629 So.2d 738, 741 (Ala.Crim.App. 1993), cert. denied, ___ U.S. ___, 114 S.Ct. 2112, 128 L.Ed.2d 671 (1994).
 III
The appellant contends that the trial court erred by allowing the coroner to testify as to the angle of the fatal stab wound.
 "In a murder prosecution it is not permissible for a witness, including a medical expert, to draw conclusions for the jury as to the relative positions of the parties at the time of the shooting from a mere examination of the wounds. It is not competent for a witness, expert or nonexpert, to draw inferences for the jury from the slant or angle of the wound as to the relative positions of the combatants when the fatal shot was fired. 'This would be invasive of the province of the jury and a matter of which they would be quite as competent to judge as the witness, having been given a description of the wound.' Mathis v. State, 15 Ala. App. 245, 248, 73 So. 122, 124 (1916).
 "However, a properly qualified expert may testify to the 'path of flight' or trajectory of the bullet, Wilbanks v. State, 42 Ala. App. 39, 151 So.2d 741, cert. denied, 275 Ala. 701, 151 So.2d 744 (1963). He may testify to the slant or angle of the gunshot wound and describe its character. *Page 829 Woods v. State, 54 Ala. App. 591, 310 So.2d 891
(1975); Mathis v. State, supra. An expert may testify about the direction from which the bullet was fired or the blow was struck, Blackmon v. State, 246 Ala. 675, 680, 22 So.2d 29 (1945), Richardson v. State, 37 Ala. App. 194, 65 So.2d 715
(1953), and may state the distance between the deceased and the barrel of the weapon at the time the fatal shot was fired. Straughn v. State, 270 Ala. 229, 121 So.2d 883 (1960)."
Ivey v. State, 369 So.2d at 1276, 1280, (Ala.Cr.App. 1979), writ denied, 369 So.2d 1281 (1979) (on rehearing). See alsoRaspberry v. State, 615 So.2d 657 (Ala.Crim.App. 1992). In this case, the coroner did not testify concerning the relative position of the parties at the time of the murder. He only discussed the angle of the victim's wounds, testimony which is permissible. Ivey; Raspberry.
 IV
During closing argument, the prosecutor made the following comment:
 "MR. BROWN: In order to find him not guilty you've got to believe that Sherea lied, Anthony lied, Jacob lied, Jeff lied, Officer Hardaway lied, and that he not only told you the absolute truth, but you've got to interpret that truth in some light that defies logic."
The appellant contends he was prejudiced by this remark and cites Davis v. State, 494 So.2d 851 (Ala.Crim.App. 1986). InDavis, the prosecutor stated during arguments that if the jury found the defendant not guilty, then the prosecutor was a liar. This court found reversible error because the prosecutor's comment was a statement of his personal opinion regarding the appellant's guilt. The prosecutor's remark in this case is more similar to the following statement made in Hunt v. State,659 So.2d 933 (Ala.Crim.App. 1994), "Everybody else has to be lying if you believe that Greg Hunt is not the guilty man." InHunt, we examined this statement and found that it was a comment on the credibility of a witness, which is permissible. Here, too, the prosecutor's remark was a reference to the credibility of the State's witnesses.
For the reasons stated above, the judgment is affirmed.
AFFIRMED.
All the Judges concur.